WILLIAM CORNELL and JOHN JOHNSON *vs.* DANIEL McCANN and others. WM. H. DUNKINSON *vs.* DANIEL McCANN and others. DANIEL McCANN *vs.* WILLIAM CORNELL and JOHN JOHNSON and others.

*Sufficiency of description of property in a decree for Sale and designating separate portions of an entire tract of land, to be liable respectively for different liens—Conflict between the Opinion of the Court and the Decree—Mode of arriving at the relative values of the separate portions of property sold— Averaging of bids.*

By a decree for the sale of real estate, the property decreed to be sold was divided into two parts, and the incumbrances on each in the order of their priority distinctly designated. The division was made by providing that "after the payment of costs," &c., "the net proceeds of sale of that portion of the said real estate *which is not covered by the said decrees* under which B. became the purchaser, and the deed from H. to W. H. A., and the deed from said A. to B. shall be applied 1st to the payment of the claim of D. McC." (designating the amount,) and 2ndly and 3rdly to certain other designated claims. "The proceeds of sale of the remaining portion of the said estate which is covered by the said decrees and deeds under which B. acquired title as aforesaid shall be applied," &c., \* \* \* \* \* The decree in conclusion provided, that in order to ascertain the relative values respectively of the said two portions of the said real estate "the said trustees should first offer the said portions of the said real estate separately, and then if they should deem the same advisable, they should offer the whole together for an advanced price, and report to the Court the same respective amounts as offered for the same two portions of the said real estate, as well as the whole amount for which the whole may be sold in order to enable the Court to ascertain what proportions of the proceeds of sale shall be considered as arising from each portion of said real estate respectively." The property was offered for sale as directed by the

Cornell and Johnson *vs.* McCann, *et al.* Dunkinson *vs.* McCann, *et al.* McCann *vs.* Cornell and Johnson.

decree, first in separate portions and then as a whole. The amounts bid not being deemed adequate the property was withdrawn, and was again offered for sale in the same manner as before, and sold at the price then offered for the whole. The auditor in distributing the net proceeds of sale, averaged the bids for the separate portions made at the sale and when the property was previously offered, and apportioned the proceeds accordingly in the manner required by the decree. On exceptions to his account, it was HELD:

1st. That the negative mode of ascertaining the portion of said real estate, the net proceeds of which was to be applied first to the payment of the claim of D. McC. was sufficiently certain, and excluded all doubt as to its extent and meaning.

2nd. That the opinion of the Court which was in conflict with the mode adopted in the decree of ascertaining the value of the different parts in the case of the sale as a whole, could not control the language of the decree, and the latter was to be preferred and obeyed rather than the former.

3rd. That the policy or propriety of the mode adopted in the decree of arriving at the relative value of the several portions of the premises sold, was not now before the Court for consideration.

4th. But that the principle upon which it was founded, supposing the bids to be *bona fide, i. e.*, that a thing is worth what it will bring in open market, is generally accepted as true, and where the parties interested are equally free to enter into competition in bidding, no reasonable objection to it seems to exist.

5th. That the same reason which would make the *bona fide* bids for the several parts a standard of value when the sale of the whole was actually made, would lead the Court to adopt as a means of valuation, the average of bids *bona fide* made on several occasions, by analogy to the practice adopted in Chancery of averaging the opinions of witnesses to ascertain the value of property or improvements; and therefore the auditor in distributing the net proceeds of sale was correct in averaging the bids made at the time of the sale, and the bids made at the time the property was previously offered for sale.

APPEALS from the Circuit Court for St. Mary's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER, ALVEY and ROBINSON, J., for McCann, and submitted on brief for Dunkinson and Pomeroy, and Cornell and Johnson.

*T. Wallis Blakistone,* for Cornell and Johnson.

*Neilson Poe* and *Peter W. Crain,* for Daniel McCann.

*Benjamin G. Harris,* for Dunkinson and Pomeroy.

BOWIE, J., delivered the opinion of the Court.

Two cases,— *William H. Dunkinson vs. Lucien Birdseye* and *Daniel McCann vs. Wm. H. Dunkinson, et al.,* pending in the Circuit Court for Saint Mary's County, as a Court of Equity, were by a decree of that Court, dated the 8th of September, 1874, consolidated, and the injunction previously issued, restraining the execution of the decree in the case of *Dunkinson vs. Birdseye,* dissolved ; " and whereas it appeared that the amount required to be paid in the latter case, remained unpaid, and the decree unexecuted," it was decreed that Messrs. Benjamin G. Harris, David S. Briscoe and T. Wallis Blakistone, Esqs., be appointed trustees in the place and stead of the trustees appointed by the said decree, and that they proceed to execute the said decree upon certain terms prescribed.

In the event of the non-payment of certain sums in said decree mentioned, it was decreed, that the real estate in the proceedings mentioned, be sold by the trustees thereby appointed, in the manner prescribed by the said decree, in the said cause of *Dunkinson vs. Birdseye,* as modified thereby, and upon the terms thereby prescribed ; and that the proceeds of any sale, which may be made either under said decree, or under this decree, shall be brought into Court to be distributed in the following manner :

After the payment of costs, commissions and expenses, the net proceeds of sale of that portion of the said real estate, *which is not covered by the said decrees* under which Birdseye became the purchaser, and the deed from Hall to William H. Allen, and the deed from said Allen to said Birdseye, shall be applied: 1st, to the claim of D. McCann, assignee of E. G. W. Hall, amounting to $17,389.46, with interest from 16th March, 1869.

2ndly. To the payment of the claim of Wm. H. Dunkinson, as established by his decree, amounting to $20,878.33, with interest from 1st of March, 1869, (if the said claim should not have been previously paid,) and the claim of Cornell & Johnson of $20,000, with interest from the 27th November, 1865—the said claims of Dunkinson, and Cornell & Johnson to receive a ratable proportion of the residue of said proceeds of sale, if the same should not be sufficient to pay the whole.

3rdly. To the payment of the claim of Cornell & Johnson for advances to Birdseye amounting to $22,876.51, with interest from 1st January, 1870.

"The proceeds of sale of the remaining portion of the said real estate, which is covered by the said decrees and deeds, under which Birdseye acquired title as aforesaid, shall be applied:"

1st. To the claim of Dunkinson, amounting to $20,878.33, with interest from March, 1869, and to the claim of Cornell & Johnson, amounting to $20,000—with interest from 1st January, 1871, (or so much of said claims as remain unpaid after application of the proceeds of sale of the other portion of the estate,) to be paid ratably.

2nd. To the other claim of Cornell & Johnson, of $22,876.51, with interest from the 1st of January, 1870.

3rd. To the claim of D. McCann, assignee of Hall, of $17,386.46, with interest from 16th March, 1869.

Other provisions, not material to be considered, being made, the decree in conclusion directs,

" In order to ascertain the relative values, respectively, of the said two portions of the said real estate as aforesaid, as affected by the relative claims and liens thereon respectively as aforesaid, in case a sale of the said real estate should be necessary, the said trustees should first offer the said portions of the said real estate separately, and then, if they should deem the same advisable, they should offer the whole together for an advanced price, and report to the Court the same respective amounts as offered for the said two portions of the said real estate, as well as the whole amount for which the whole may be sold, in order to enable the Court to ascertain what proportions of the proceeds of sale shall be considered as arising from each portion of the said real estate, respectively."

The trustees advertised the property for sale, and on the 14th of May, filed their report, in which they state among other things, that having given bond with sureties as required, and given due notice of the time, place, and terms of sale, they did pursuant to said notice, attend at the Court House door, at Leonardtown, St. Mary's County, on the 23rd of March, 1876, at the hour named, and then and there proceeded to offer said real estate as follows, to wit :

" In the first place, said trustees proceeded to offer at public auction, to the highest bidder, the lower fifty acres of the 'Point-Lookout' property, the real estate decreed to be sold, exclusive of the hotel and grounds attached thereto, and received a bid for the same, of $13,000, that being the highest bid therefor, which bid was reserved. The said trustees then offered in the same manner, the balance of the said real estate, consisting of the whole of the 'Point-Lookout' farm, and the hotel and grounds, which had been excluded from the lower fifty acres, as aforesaid,

Cornell and Johnson *vs.* McCann, *et al.* Dunkinson *vs.* McCann, *et al.*
McCann *vs.* Cornell and Johnson.

and they received a bid for the same, of $10,000, which was the highest bid therefor, which bid was also reserved. And the trustees then offered the whole of said real estate for sale, upon the terms prescribed by the decree, and received a bid for the same of $22,500."

The trustees believing the sum of $22,500, below the value of the property, withdrew the whole, and re-advertised the same, upon the same terms and conditions, in the same papers, to be sold in the City of Baltimore, at the Exchange Sales Rooms, No. 55 Second Street, at 1 P. M., on the 6th of May, 1876.

At the time and place last mentioned, they offered at public auction to the highest bidder, upon the terms mentioned, the lower fifty acres of said property, "exclusive of the hotel and grounds thereon situated," and received a bid from Daniel McCann, of $24,000, being the only bid therefor, which was reserved.

The trustees then offered upon the same terms and conditions, the balance of the said real estate, consisting of the remainder of the said "Point-Lookout" property, "inclusive of the said hotel and grounds attached thereto, and they received for the same, a bid of $4000 from Charles N. Black, of New York City, this being the only and highest bid received therefor, which was also reserved."

The trustees then offered, upon the same terms and conditions, the whole of said real estate mentioned in these proceedings, and sold the same to Frank Hume, Esq., of Washington, D. C., for the sum of $30,300, he being then and there the highest bidder therefor.

The usual order *nisi* having been passed and duly published, and no cause shown to the contrary, the Court on the 6th of June, 1876, ratified the sale finally.

On the same day, an order was passed, referring the case to the auditor, directing him to state an account,

distributing the proceeds of sale among the parties enti-
tled, according to their respective interests as established
by the decree ; and authorizing the auditor to take proof
as to the value of the respective portions of the estate,
for the purpose of ascertaining the proportion of the pro-
ceeds to be distributed to the respective liens.    Daniel
McCann filed his petition, praying this order might be
rescinded, because it was contrary to the terms of the
decree.

Thereupon, on the 26th June, 1876, the Court passed
an explanatory order, reserving the rights of all parties
and all questions arising under said order.

Exceptions were filed by McCann to all the testimony
taken by the auditor under these orders.

The auditor, under these orders, stated three Accounts,
A, B and C.

In Account A, after deducting costs and expenses, " in
accordance with the testimony taken as to the relative
value of the different portions of the property covered by
the conflicting claims," he allowed

One-fourth of the balance to Daniel McCann, and his
assignee.

Three-fourths of the balance to Dunkinson and Cornell
and Johnson, in proportion to the amounts of their respec-
tive claims.

Account B, stated in accordance with instructions from
the solicitors of McCann, allowed to the different lien
holders, â proportion of the net proceeds of sale, accord-
ing to the amounts bid for the different portions of the
property at the sale thereof.

Account C, stated in obedience to instructions of the
solicitor for Dunkinson and Pomeroy, distributed the pro-
ceeds of sale between Dunkinson's assignee and Cornell
and Johnson.

Upon the petition of the trustees, (in consequence of the
inadvertent omission of certain expenses,) these Accounts

were remanded and reformed, and Accounts D, E and F were reported in their stead.

Account D being upon the same principle as A.
" E " " " " B.
" F " " " " C.

McCann filed exceptions to Accounts A, C, D and F. On the 28th of September, 1876, these exceptions were set down for hearing on the 16th of November then next, with leave to any of the parties in the meantime, to take testimony before the auditor, to be used at the hearing. Under this order, the record of the cause in the Circuit Court for St. Mary's County, as a Court of equity, in which Peter P. Smith was complainant and Thomas Johnson, defendant, was filed by the solicitor of Dunkinson as evidence.

McCann excepted again to all the testimony taken by the auditor, as inconsistent with the terms of the decree, and to the introduction of the record of *Smith vs. Johnson,* as not in evidence when this case was decided by the Court of Appeals. Cornell, survivor of Johnson, excepted to Accounts D, E and F for several reasons, the second and fourth of which are only material.

2nd. Because Accounts D and E distributed to McCann and his assigns, an amount of proceeds greater in proportion to the amount allowed the exceptant and other parties in interest, than the property covered by McCann's lien bears to the property covered by the liens of the exceptant and other parties in interest.

4th. Because the value of the land upon which McCann claims to have a lien, cannot be estimated, for the reason that the said land has not been and cannot be located.

Pomeroy, assignee of Dunkinson, joined in the second, third and fourth exceptions of Cornell, and further excepted to Accounts D and E, because the auditor should have allowed him, as assignee of Dunkinson, his whole

claim, after deducting costs, etc., instead of distributing any portion of the same to the executors of Key, Charles Mason, or J. B. Hutchinson.

On the 9th of March, 1877, the cause was again remanded to the auditor, to state another account in which the net proceeds of sale should be distributed to the claims of Daniel McCann, W. H. Dunkinson, and Cornell and Johnson, respectively, in proportion to the relative values of the two portions of the said real estate, as specified in the decree as shown by the bids made at the time of sale, and the bids made on the previous occasion, in which said real estate was offered but not sold, *the said proportion to be made according to the average of said bids on the said two occasions.*

In pursuance of this decretal order, Account G was afterwards stated and filed, on the 15th of March, 1877, by the auditor, in which he says "he has distributed the net proceeds of sale to Daniel McCann, and to Wm. H. Dunkinson, and Cornell and Johnson respectively, in proportion to the relative value of the two portions of said real estate, as specified in the decree, as shown by the bids made at the time of sale, and the bids made at the time the property was previously offered for sale, taking the average of the bids made on each portion of the property on the two occasions." This Account was finally ratified on the 28th of March, 1877, and the other Accounts of the auditor rejected; from which final order, the several claimants, McCann, Cornell and Johnson and Wm. H. Dunkinson, respectively appealed.

The final decree passed in these consolidated cases, on the 8th of September, 1874, and afterwards affirmed by this Court on appeal, (43 *Md.*, *Opinions Unreported*, *Liber G. E. & J. S. F.*, *No.* 1, *fol.* 577,) determined the liens of the several claimants, on the respective portions of the property decreed to be sold; the order in which the proceeds of sale should be applied; and in the event of the

property being sold in one body, the manner in which the value of the several portions subject to the liens should be ascertained, to enable the Court to make distribution of the proceeds, in proportion of the value of each part to the the value of the whole.  *Cumberland Coal and Iron Co. vs. Sherman, et al.*, 20 *Md.*, 131 ; *Brown vs. Somerville*, 8 *Md.*, 444 ; *Mong vs. Bell*, 7 *Gill*, 246 ; *Bolgiano vs. Cooke, et al.*, 19 *Md.*, 275.  These *modal* provisions of the decree were alike binding upon the trustees, the parties and the Court, whilst they remained unchanged.

The appellants, Cornell & Johnson, contend that the decree, (or its affirmance,) so far from establishing any lien of McCann, never raised or touched the question of his interest, as the decree itself expressly left open the question as to what was not included in Birdseye's purchases ; the decree giving whatever was so included to Dunkinson, and Cornell & Johnson, consequently that McCann is entitled to no part of the proceeds of sale.

2ndly.  That if the claim of McCann is established as to the proceeds of the fifty acres, that he is not entitled to the proportion assigned him ; which proportion was to be ascertained in the mode referred to in ·the Court's *opinion*, preceding and filed with the decree, *i. e.* "by sale of the respective portions separately, or if sold together, by proof to be taken before the auditor upon notice to the respective parties."

McCann excepts to all the testimony taken before the auditor under order of the Court, subsequent to the decree, as being in conflict with the express terms of the decree, which is binding upon all parties.

2ndly.  Because the testimony taken in Leonardtown, and in Baltimore City, was not taken in conformity with the order of the Court authorizing the same.

3rdly.  Because the record in the case of *Smith vs. Johnson*, is inadmissible to affect the operation of the decree of the Court of Appeals, affirming the decree below.

This exceptant further contends, that the distribution of the proceeds should be determined by the bids for the several parts, made when the property was sold in Baltimore and not upon the average of the bids made when it was both offered and sold.

The exceptant, Dunkinson, insists, that the clause in the decree, directing the mode of sale, to ascertain the value of the several parts of the property decreed to be sold, is merely directory or advisory, not imperative, and should be disregarded as improvident, and not consistent with equity and justice.

2ndly. That the fifty acres subject to McCann's lien, are incapable of location, and no estimate can be put upon them, so as to justify the Court in distributing the proceeds of sale arising from the whole tract.

It seems to us entirely too late to insist the decree has not decided the lien of McCann, or the property on which it attached.

In this respect, the decree in our opinion, is clear and unambiguous.

The property to be sold is divided by the decree into two parts, and the incumbrances on each, in the order of their priority distinctly designated.

" The net proceeds of that portion of the said real estate which is not covered by the said decrees, under which the said Birdseye became the purchaser, and the said deed from Hall to Wm. H. Allen and the deed from said Allen to said Birdseye, shall be applied, first to the payment of the said claim of the complainant, Daniel McCann, assignee," etc.  It was only necessary to ascertain what was covered by the decrees and deeds mentioned, to determine what was not included in them.  *"Id certum est, quod certum reddi potest."*  The negative form of description, excluded all doubt as to its extent and meaning.

Nothing could be more emphatic, except the imperative terms applying the proceeds of each portion, to the particular claims of the several parties to the cause.

The liens and the property to which they are respectively attached, being established by the decree, it only remains to inquire whether the mode adopted by the Court in Account G, is in conformity to the terms of the clause of the decree prescribing the mode to be pursued by the trustees, "in order to enable the Court to ascertain what proportion of the proceeds shall be considered as arising from each portion of the said real estate respectively."

The Court had in its opinion filed with and preceding the decree, said, "In case of a sale of the property to pay these liens, the value of the respective portions may be ascertained by an actual sale of the portions separately, and a separate return of the proceeds thereof by the trustees, or in case of a sale of the whole together, as the same may be deemed most advisable by the trustees, the value of the respective portions in reference to the proceeds of sale, will be ascertained by proof to be taken before the auditor, upon notice to the respective parties, or their solicitors."

In the final clause of the decree, an entirely different mode of ascertaining the value of the several parts, in case of the sale as a whole is prescribed.

There can be no doubt, where there is a conflict between an opinion and a decree, the latter is to be preferred and obeyed rather than the former.

This Court has frequently decided that an opinion of the Judge is not in any sense a final act. In 27 *Md.*, 243, in the case of *Phillips and Pearson*, it was held, the opinion of the Judge however positive, was not final, so as to be the subject of appeal, and might always be altered and changed, before final decree. *Hagthorp, etc. vs. Hooks' Adm'rs*, 1 *G. & J.*, 309 ; *Snowden, et al. vs. Dorsey, et al.*,

6 *H. & J.*, 114 ; *State, use of Bruner vs. Ramsburg, et al.*, 43 *Md.*, 432.

The Court distinguished between *an opinion* and a *judicial opinion;* the latter being synonymous with what has been adjudged or decreed ; " the former being interlocutory, the other final in its character."

The policy or propriety of this mode of arriving at the relative value of the several portions of the premises sold, is not now before us for consideration.

But the principle upon which it is founded, supposing the biddings to be " *bona fide,*" *i. e.*, that a thing is worth what it will bring in open market, is generally accepted as true, and where the parties interested, are equally free to enter into competition in bidding, no reasonable objection to it seems to exist.

The lien creditors, being alike entitled to the proceeds of the several parts to which their liens respectively attached, had equal opportunity of bidding, to the extent of their several claims, for the portions offered.

It is not to be assumed that the bids were nominal, not real. If one party sought to inflate the value of the portion on which his lien attached, with the view of increasing his dividend of the whole proceeds, the other claimants had equal opportunity of counteracting the design, by bidding largely on the other portion.

There was therefore nothing unfair or unequal in the method prescribed by the decree. But it is contended, the average of the bids to be considered, should have been the bids made at the time of the actual sale, and not the bids at both offerings.

The same reason which would make the *bona fide* bids, for the several parts, a standard of value, when the sale of the whole was actually made, would lead the Court to adopt as a means of valuation, the average of bids, *bona fide* made on several occasions, by analogy to the practice adopted in

chancery, of averaging the opinions of witnesses, to ascertain the value of property or improvements.

The aggregate of the bids divided by the number of bidders, would be the average value of the article bid for in the one case, as the aggregate of estimates divided by the number of witnesses would be in the other. *Vide, Barnum vs. Barnum*, 42 *Md.*, 254.

The learned Judge in his opinion accompanying the order ratifying Account G, has very clearly and forcibly expressed his reasons for basing the distribution upon the bids made on the previous occasion, when the land was offered, as well as those made when the land was sold.

Finding nothing in the order of distribution adopted in conflict with the terms of the decree, the order of the Court appealed from, ratifying and confirming the auditor's report and Account G, and directing the trustees to apply the proceeds of sale accordingly, with a due proportion of interest, etc., and rejecting the other reports and Accounts of the auditor, etc., is affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 8th May, 1878.)