Henry J. Burchell *v.* Susannah Osborne et al.

In an action to foreclose a second mortgage upon certain lots in the city of New York, the first mortgagee was made a party, and payment of the first mortgage was adjudged to be made out of the proceeds of the sale. Other persons who held subsequent mortgages covering, in whole or in part, said lots, which took effect at different dates, were made parties to the action. The decree of sale provided for a sale of the lots in separate parcels in the inverse order of the giving of the mortgages. A surplus having arisen on sale of all the lots, the court below directed a distribution, according to the priorities as liens of the various subsequent mortgages. *Held,* no error; that the decree did not and could not settle the priorities and equities of the subsequent incumbrances; that the whole proceeds of sale formed a common fund, to be applied first to the payment of the first and second mortgages, the surplus to the payment of the subsequent liens in the order of their priority, subject to the limitation that no greater amount should be paid in discharge of a lien on any lot than was realized for the lot at the sale; that, therefore, the surplus could not be regarded as constituting a specific fund, subject to the specific liens upon the last lot sold, but as a common fund distributable to all the lienors in the order of the date when their mortgages became liens.

(Argued January 24, 1890 ; decided March 4, 1890.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made March 4, 1889, which reversed an order of Special Term confirming the report of a referee in surplus money proceedings.

The nature of the appeal and the material facts are stated in the opinion.

*Lilian Herbert Andrews* for appellants. Where land is sold under a judgment and the surplus moneys are brought into court, creditors having liens upon the land, subsequent to the judgment, have the same liens upon the surplus moneys which they had upon the land previous to the sale. (*Averill* v. *Loucks,* 6 Barb. 470 ; *Purdy* v. *Doyle,* 1 Paige, 558.)

*Hal Bell* for appellant Arbogast. The view taken by the General Term is erroneous, because the decree directing the

sale and the manner in which the eight lots and houses thereon should be sold, fixed the rights of the parties and is conclusive upon them. (*Stuyvesant* v. *Hall,* 2 Barb. Ch. 151; *McCracken* v. *Valentine,* 9 N. Y. 42–45; *Vandercook* v. *C. S. Inst.* 5 Hun, 641; *Price* v. *Lauve,* 49 Tex. 74; *Miller* v. *Sharp,* 49 Cal. 236; *Adams* v. *Cameron,* 40 Mich. 506; *Delafield* v. *White,* 19 Abb. [N. C.] 104; Thomas on Mort. [2d ed.] 1887, §§ 957, 965; *Charter* v. *Stevens,* 3 Den. 33; *Bridgen* v. *Carhartt,* 1 Hopk. Ch. 234; *Averill* v. *Loucks,* 6 Barb. 470; *Lithaner* v. *Royle,* 17 N. J. Eq. 40.) The defendant and respondent Currier not having appealed from the Special Term order to the General Term was in no legal position and had no right to be benefited by the decision or order of the General Term. (Code Civ. Pro. § 1294; *Murphy* v. *Spaulding,* 46 N. Y. 556.)

*Henry Arden* for respondents. Where the debtor has conveyed or mortgaged a portion of the mortgaged premises, retaining the rest, the grantee or mortgagee can insist that the portion remaining in the mortgagor's hands be first sold and the proceeds applied to the payment of the debt. (*Stevens* v. *Cooper,* 1 Johns. Ch. 430.) The rule has its foundation in the equitable principle that where a creditor has two funds for the security of his debt, and another creditor has an interest in only one of said funds, without right to resort to the other, equity will compel the first creditor to take his satisfaction out of the fund in which the second creditor has no interest, before resorting to the other fund. (*Ingalls* v. *Morgan,* 10 N. Y. 178.) The rule controls where different parcels of the mortgaged premises are incumbered with separate mortgages. (*N. Y. L. Ins. Co.* v. *Vanderbilt,* 12 Abb. Pr. 458; *Oppenheimer* v. *Walker,* 3 Hun, 30; *Savings Bank* v. *Wood,* 17 id. 133; *Steere* v. *Childs,* 15 Hun, 511.) A mortgage, for the purpose of determining equities between the respective owners of parcels of land, subject to incumbrance upon all, is to be regarded as an alienation *pro tanto*, at the time of its date. (*Hart* v. *Wandle,* 50 N. Y. 386.) A subse-

quent mortgage upon a part of the equity of redemption, by the owner of the whole of the mortgaged premises, is only an alienation of that part to the extent of the money due on such junior mortgage, and for which the owner of such junior mortgage has no other security which should in equity be first resorted to. If a part of the mortgaged premises has been mortgaged a second time, and the residue thereof has been sold absolutely, subsequent to the second mortgage, the part mortgaged should be first sold and the surplus proceeds of that sale, beyond the amount of principal and interest due on the second mortgage should be applied in payment of the first mortgage before resorting to a residue of the premises for that purpose, which was conveyed absolutely. (*Kellogg* v. *Rand*, 11 Paige, 50.) The right of the junior incumbrancer cannot be disturbed. (*Gill* v. *Lyon*, 1 Johns. Ch. 447; *Clowes* v. *Dickerson*, 5 id. 235; 9 Cow. 403; *James* v. *Hubbard*, 1 Paige, 228; *Governeur* v. *Lynch*, 2 id. 300; *Jenkins* v. *Freyer*, 4 id. 47; *Guion* v. *Knapp*, 6 id. 35; *Skeel* v. *Spraker*, 8 id. 182; *Patty* v. *Pease*, 8 id. 277; *Schryver* v. *Teller*, 9 id. 173; *Kellogg* v. *Rand*, 11 id. 59; *N. Y. L. I. & T. Co.* v. *Cutler*, 3 Sandf. Ch. 176; *Stuyvesant* v. *Hall*, 2 Barb. Ch. 151; *Ferguson* v. *Kimball*, 3 id. 616; *L. Co.* v. *Bell*, 22 Barb. 54; *Hopkins* v. *Wolly*, 81 N. Y. 84.) The direction as to the order of sale in the decree did not affect the rights of the junior lienors to the surplus, and was not intended to. It cannot affect the equities of the lienors as between themselves; and where the whole premises are sold, it makes no difference in what order the parcels are sold. The proceeds will go into court as a common fund, and the junior liens paid in the order of their priority. (*Snyder* v. *Stafford*, 11 Paige, 78; *Oppenheimer* v. *Walker*, 3 Hun, 33.) So jealous is the court in protecting the rights of the junior lienors that it will order the sale of more lots than sufficient to pay judgment, even after the sale, under the decree, of sufficient to pay same, if the interest of the junior lienors demand it. (*Livingston* v. *Mildrum*, 19 N. Y. 442.) Where a defendant has paid more than

his proportion of a prior lien, he will be deemed subrogated to the plaintiff's rights, and awarded satisfaction out of the surplus. (*Cheesbrough* v. *Millard*, 1 Johns. Ch. 412.) The rights of the junior incumbrancers in the order of their priority, according to the principles above stated, will always be enforced in a court of equity, and are recognized as a rule of property, in the courts of the United States. (*Orvis* v. *Powell*, 98 U. S. 176; *Thomas* v. *M. M. Co.*, 43 Hun, 487.) These principles of distribution have been recognized and followed in recent cases in the Court of Appeals. (*O. N. Bank* v. *Moore*, 112 N. Y. 543; *Andrews* v. *O'Mahoney*, Id. 567.)

*Wm. B. Putney* for respondent Currier. The several mortgagees should participate in the said surplus in the order of their respective priorities, as to the times when their said several mortgages were made. (*Ingalls* v. *Morgan*, 10 N. Y. 178; *James* v. *Hubbard*, 1 Paige, 228; *Governeur* v. *Lynch*, 2 id. 300; *Guion* v. *Knapp*, 6 id. 35; *Schreyver* v. *Teller*, 9 id. 173; *Stuyvesant* v. *Hall*, 2 Barb. Ch. 151; *Lafarge Co.* v. *Bell*, 22 Barb. 54; *Barnes* v. *Mott*, 64 N. Y. 397, 402.) The entire plot having had to be sold, any surplus that arose, arose not solely from the sale of lot No. 8, but is to be regarded as the surplus arising from the sale of the entire plot, and constituting a common fund for the benefit of all lienors upon the entire plot or parcels thereof, without regard to the specific liens on lot No. 8. (Thomas on Mort. §§ 964, 965; *Snyder* v. *Stafford*, 11 Paige, 71; *Van Slyke* v. *Van Loan*, 26 Hun, 344, 347.) There is no destruction of the effect of the recording acts as to notice by reason of the application of the surplus to the payment of the several mortgages in the order of their respective priorities. (*Stuyvesant* v. *Hall*, 2 Barb. Ch. 151.)

GRAY, J. The appellants are interested in the disposition of some surplus moneys, arising upon a sale under a decree in foreclosure in this action.

The question is, whether the General Term, in reversing an order for distribution made at Special Term, and in directing distribution according to the priorities of the various junior mortgages in point of date as liens, have violated those equitable principles by which these matters are guided to the justest result. I am inclined to hold that the opinion of the General Term states correctly the general rule for the determination of the equities of junior incumbrancers in such cases. The mortgage foreclosed covered all of eight lots of land in the city of New York, and was second to another mortgage, of like extent of lien. The first mortgagee was made a party to this action and payment of the first mortgage debt was adjudged to be made from the proceeds of the foreclosure sale. After satisfying the terms of the decree, the surplus in question remained. The appellants and the respondents, with other parties, held mortgages affecting in whole, or in part, these eight lots; which were subsequent to the mortgage foreclosed and which were made and took effect at different dates.

The decree of sale provided for a sale in separate parcels, in the inverse order of their alienation; that is to say, of the giving of mortgages upon them. The reason of this direction was, that by such a sale more might be realized than by sale in block; and upon this mode of sale the junior incumbrancers had insisted. They were parties to the action, and such a provision, we may assume, was for their general benefit and protection. The General Term decided that the principle upon which the equities of the parties ought to be determined was, that the portions of the mortgaged premises first aliened should be the last to be sold to pay the mortgage debt. They held that the effect of alienation of lands by mortgage is to postpone the application of the property covered to the payment of the general mortgage debt, only to the extent of the amount secured by the junior mortgage.

It was supposed, at the Special Term, that the decree, in directing this sale in the inverse order of alienation, by separate parcels, had settled the relative rights and equities of the parties; but I think the learned justice fell into error in this assumption.

The whole premises were liable for the debts of the first and second mortgages, and, if the sale should be by separate parcels, that would be because the court was satisfied that in so ordering the rights of parties would be better protected. The decree did not and could not settle any question as to the relative priorities and equities of the subsequent incumbrancers. To warrant such a clause in the decree, it would have been necessary to have raised some issue in the pleadings and proceedings prior to decree, upon which the judgment of the court might be passed. When a surplus arises upon a foreclosure sale, the question may then come before the court as to the several and relative rights of subsequent lienors to share in its distribution, and that can be competently determined upon equitable principles in a special proceeding, as in this case. The learned justice at Special Term also thought that such a sale by separate parcels wiped out the specific mortgage debts upon each particular lot, as it was sold towards the satisfaction of the decree. This would, however, be a violation of equitable principles. Each lot covered by the several mortgages foreclosed was liable in equity to contribute to the payment of the debt represented thereby and, in the case supposed by the learned justice at Special Term, of the sale stopping short at the seventh lot, because of a sufficient realization at that point, the eighth lot would not have remained *solely* liable to the specific liens of the junior mortgages covering it. The equity in that remaining lot would have been subject to the claims of other incumbrancers of the lands sold, which were prior in point of time. As such an order of sale was for the very benefit of the junior incumbrancers, who were made parties to the action, equity would not tolerate that their relative rights and equities should be so interfered with, as to permit so great an injustice and such an inequality of rights to be worked out. And, rather than that should result, a sale of the remaining lot would have been directed, that its proceeds might be disposed of as equity might require.

Now here the sale of the last lot produced the surplus for distribution. The whole proceeds of sale formed a common fund,

to be applied, first to the payment of the first and second mortgage debts, and then the surplus became, obviously, as it seems to my mind, subject to the claims of lienors upon the lands which had been sold, and applicable to those claims in the order of their priority; subject, of course, to the limitation that no greater amount should be paid in discharge of the lien on any lot than was realized for the lot at the sale. It is clear enough, that in such a sale, by separate parcels instead of in block, each parcel, as it went to discharge the general mortgage, contributed to relieve the last lot from that lien. If, therefore, through the sale, a surplus arose, it cannot be regarded as constituting a specific fund, subject to the specific liens upon the last lot, but, under equitable rules in the marshalling of the debtor's assets, as a common fund distributable to all of the lienors upon the lands sold, in the order of the dates when their mortgages became liens upon the debtors' property. The lien of each junior incumbrancer, which had been affixed to the land sold to discharge the general lien of the mortgage foreclosed, would, it seems to me, equitably attach to the fund resulting from the sale of the lands, in the order in which the lien had been originally created. Upon such a sale as this, when a surplus arises as the final result, the liens would, in equity, be transferred from the land sold to the ultimate fund arising, and, naturally, in the order of their priority as such.

I think, for the reasons stated in the General Term opinion, as well as for those here briefly given, the order of the General Term was right and should be affirmed with costs.

All concur.

Order affirmed.