BANKS-MILLER SUPPLY COMPANY, *a corporation*

*v.*

JOHN D. SMALLRIDGE *and* PHILIP G. TERRIE, *Trustees, et al.*

(No. 12867)

Submitted May 20, 1970.          Decided July 7, 1970.

*John D. Smallridge,* for appellants.

*Donald E. Santee,* for appellee.

HAYMOND, JUDGE:

This is a statutory proceeding by suggestion under Section 10, Article 5, Chapter 38, Code, 1931, based upon a judgment in favor of the plaintiff, Banks-Miller Supply Company, a corporation, against B & B Development Company, Inc., for $9,706.20 with interest and costs, upon which an execution had been issued. In this proceeding, instituted September 27, 1966 in the Common Pleas Court of Kanawha County, the plaintiff seeks to require the payment of a sufficient portion of $12,-007.02 then in the custody of the defendants, John D. Smallridge and Philip G. Terrie, Trustees, sometimes herein referred to as the trustees, to satisfy the foregoing judgment of the plaintiff. That sum of money constituted the surplus remaining after the trustees had satisfied the lien of a deed of trust first in priority upon a tract of 7.01 acres of land, made by B & B Development Company, Inc., to John D. Smallridge and Philip G. Terrie, Trustees, duly recorded March 2, 1966, which tract of land was sold by the trustees at public auction on September 26, 1966. At the sale Burke-Parsons-Bowlby Corporation purchased the property and paid to the trustees the purchase price of $45,500.00.

After paying the sum of $33,492.98 in satisfaction of the indebtedness owing to the Bank of West Virginia, a banking corporation, which was made a party defendant to this proceeding upon the third party complaint of the trustees, sometimes herein referred to as the bank, which indebtedness was secured by the first deed of trust, there remained in the

custody of the trustees a surplus of $12,007.02 which, after the institution of this proceeding, the trustees paid to the bank upon a note of $16,500.00 of B & B Development Company, Inc., held by the bank, the payment of which was secured by a second deed of trust upon Lot No. B-2, a portion of the 7.01 acres, made by B & B Development Company, Inc., to John D. Smallridge and Charles W. Caldwell, Trustees, dated March 21, 1966 and duly recorded April 5, 1966, to secure the payment of the foregoing note and which deed of trust is a lien second in priority upon Lot No. B-2.

The judgment rendered June 22, 1966, by the Common Pleas Court of Kanawha County in favor of the plaintiff against B & B Development Company, Inc., recorded June 27, 1966, is a lien second in priority upon the 7.01 acres of land, except the portion designated as Lot No. B-2, and is a lien third in priority upon that lot.

Upon the trial of the case in lieu of a jury the Common Pleas Court of Kanawha County, by final judgment rendered July 23, 1968, held that the surplus, which was formerly in the custody of the trustees, should be apportioned on the basis of 30 per cent to the Bank of West Virginia and 70 per cent to the plaintiff, and that the bank was entitled to retain $3,522.11 of the surplus and ordered the bank to pay to the plaintiff the remainder of the surplus of $8,484.91.

By its judgment of May 12, 1969, the Circuit Court of Kanawha County refused to grant the defendants an appeal from the judgment of the Common Pleas Court of Kanawha County and from that judgment of the circuit court this Court granted this appeal upon the application of the defendants.

The defendants assign and rely upon numerous errors to reverse the judgment of the Common Pleas Court, one of which is the action of the court in holding that 30 per cent of the surplus be retained by the defendant Bank of West Virginia and the remaining 70 per cent be paid by the bank to the plaintiff.

Upon the trial Fletcher Parsons, a witness offered by the plaintiff, who purchased the property in behalf of Burke-

Parsons-Bowlby Corporation at the trustee's sale, testified that the value of the entire property was $45,600.00, that the value of Lot No. B-2 was $13,000.00, and that the value of the remainder of the 7.01 acres was $32,600.00 which was less than the indebtedness secured by the first deed of trust. Robert S. Young, Sr., another witness offered by the plaintiff, testified that Lot No. B-2 had been subsequently sold for $20,000.00. James J. Barth, a qualified real estate appraiser, testified that the value of the 7.01-acre tract was at the rate of $4,000.00 per acre or the total value, less Lot No. B-2, of $28,000.00.

The controlling question for decision is whether the surplus of $12,007.02, realized from the sale of the entire tract of 7.01 acres, which sum is less than the indebtedness owing to the defendant Bank of West Virginia and less than the value of Lot No. B-2 and is secured by the second deed of trust, should be applied in its entirety to the payment of the debt secured by that deed of trust or should be apportioned upon the basis of 30 per cent to the debt secured by the second deed of trust and 70 per cent to the judgment of the plaintiff which is a lien upon all of the tract of 7.01 acres.

The trial court found the value of Lot No. B-2 to be 30 per cent and the value of the residue of the 7.01 acres to be 70 per cent of the total value of the entire tract of 7.01 acres, including Lot No. B-2. Considering the total value of the 7.01 acres, as shown by the evidence, to be $45,600.00, the 30 per cent value of Lot No. B-2 would be approximately $13,000.00 and the 70 per cent value of the residue of the 7.01 acres would be approximately $32,600.00. On the basis of the valuation found by the court, which finding is supported by the evidence and will not be disturbed upon this appeal, the value of Lot No. B-2 of $13,000.00 is in excess of the amount of the surplus of $12,007.02 and the amount of the surplus is not sufficient to pay in full the debt secured by the second deed of trust.

There is a dearth of authority, text book and case, on the precise question here involved, and the cases in which the question has been considered in other jurisdictions are conflicting.

The general rule is that junior liens are satisfied out of surplus in the same order of priority which they held prior to the foreclosure under a deed of trust. On that point 59 C.J.S., *Mortgages,* Section 800b, provides that "Liens inferior to the lien of the mortgage foreclosed attach to the surplus proceeds of sale in the same order and relative priority which they held with reference to the premises before the foreclosure, and must be paid in that order, unless some equitable right demands a different order of payment, as in the case where one creditor can found a claim to preference on his superior vigilance and activity, or unless one entitled to the surplus has either expressly or impliedly waived his rights." No equitable right of the character indicated in the foregoing quotation is involved in this proceeding. In 37 AM. JUR., *Mortgages,* Section 875, is this language: "Some courts have held that the right to a surplus created by a foreclosure sale, as between a junior mortgage upon a portion of property foreclosed under a prior blanket mortgage, and another junior mortgage, or other lien, upon another portion of the foreclosed property, should be determined by the priority in point of time of the establishment of the different liens. On the other hand, it has been held that the extent to which the portion of the property covered by a junior lien has contributed to the creation of the surplus should determine the proportionate share of that lien in the surplus funds." See also Annotation 119 A.L.R. 1109.

Some of the cases in accord with the rule that a surplus created by a foreclosure sale, as between a junior mortgage upon a portion of the property foreclosed under a prior mortgage and another junior mortgage or other lien upon another portion of the foreclosed property should be applied according to the priority in point of time of the different liens, are *Oppenheimer v. Walker,* 3 Hun. (N.Y.) 30 and *Burchell v. Osborne,* 119 N.Y. 486, 23 N.E. 896.

In the *Oppenheimer* case it appeared that three lots were subject to the lien of a first mortgage, two of the lots were subject to the lien of a second mortgage, and subsequently a mechanic's lien was created against all three lots. The three lots were sold as one parcel under the first mortgage and the

question involved was how the surplus, after the payment of the lien of the first mortgage, should be applied as between the holder of the second mortgage and the owner of the mechanic's lien. The court held that the surplus should be applied to the payment of the second mortgage to the extent of the amount due under that mortgage.

In the *Burchell* case the mortgage foreclosed was a first mortgage covering eight houses and lots and there were several junior mortgages, some covering all eight of the lots, some covering a portion of them, and some covering only one lot. The last house sold under the decree was that upon which the defendant Fay held a mortgage which was next in order of time after the first mortgage. The house was also covered by a mortgage held by the defendant Mehrhof which was fifth in order of time, and a mortgage held by the defendant Arbogast which was seventh in order of time. The next mortgage after Fay's was held by the defendant Brainerd Quarry Company but did not cover the house covered by Fay's mortgage. Defendant Steers held a mortgage which was fourth in order of time and covered another house. In order to raise sufficient money to pay the amount due the plaintiff, the holder of the first mortgage, it was necessary to sell all the houses. The last house which was covered by Fay's mortgage sold for $30,000.00 and after paying the first mortgage there was a surplus of $20,000.00. The court held that the whole proceeds of sale formed a common fund to be applied first to the payment of the first and second mortgage debts and then to the other liens upon the lands sold in the order of their priority subject to the limitation that no greater amount should be paid in discharge of the lien on any lot than the amount realized from the sale of such lot.

Some of the cases contrary to the holding in the *Oppenheimer* and *Burchell* cases are *Tucker v. Crown Corporation*, 136 Fla. 517, 183 So. 740, 119 A.L.R. 1102, and *Bryson v. Newtown Real Estate and Development Corporation*, 153 Conn. 267, 216 A.2d 176.

In the *Tucker* case there were rival claimants to a surplus arising upon a foreclosure sale under a first mortgage covering

two parcels of land. One claimant was the junior mortgagee of one of the parcels and the other claimant was the trustee in bankruptcy of the former owner of both parcels before the foreclosure. The court apportioned the surplus and held that the relation which the value of the parcel covered by the junior mortgage bore to the value of the parcel not so covered was the proper basis for determining the proportionate share of each creditor in the surplus.

In the *Bryson* case the plaintiff held a first mortgage on four contiguous tracts of land designated as Parcel *A*. The defendant Pellegrino subsequently obtained a mortgage on one of the four tracts designated as Parcel *B*. After the execution of the Pellegrino mortgage, the defendant Derman obtained a junior mortgage on Parcel *A*. Upon foreclosure the four tracts were sold as one tract for $57,000.00 and after the payment of the claim of the first mortgage there was a surplus of $15,173.52 for distribution to the junior mortgagees. The court held that where there is a surplus after satisfying the prior mortgage, liens of junior encumbrances are transferred to the surplus fund and the court should determine the claims asserted by the junior encumbrances and that the defendant Derman was entitled to a pro rata share of 66.35 per cent of the surplus and ordered his claim of $9,748.59 to be fully satisfied and the balance of $5,424.93 of the surplus to be paid upon the Pellegrino claim of $16,343.50.

Though the court in the *Tucker* case apportioned the surplus on the basis of the relative value of the land subject to the junior liens, it recognized the general rule by this language in the opinion: "In determining who is entitled to surplus proceeds arising in a foreclosure sale, it is the general rule that all incumbrances on mortgaged premises inferior to the mortgage on which sale is based, must be paid in the order of time in which they respectively became liens, except as some equitable right demands a different order of payment."

In accordance with the general rule, the right to surplus derived from the sale of land under a first deed of trust, as between the holder of the lien of a second deed of trust upon

a portion of the land covered by the first deed of trust and the holder of the lien of a judgment upon all the land covered by the first deed of trust rendered after the recording of the second deed of trust will be determined by the priority in time of the establishment of each of such liens.

This Court adheres to the general rule and holds that where there has been a foreclosure and sale of a tract of land under a first deed of trust and there is a surplus after satisfying the lien of the first deed of trust and a portion of the tract is subject to the lien of a second deed of trust such lien attaches to the proceeds of sale and the surplus of such proceeds should be applied to the payment of the indebtedness secured by the second deed of trust to the extent, but not in excess, of the value of the land subject to the lien of the second deed of trust at the time of the sale to the exclusion of the holder of the lien of a judgment rendered after the recording of both deeds of trust which is a lien upon all the land covered by the first deed of trust, including the portion covered by the second deed of trust, but is subsequent in priority to the lien of the second deed of trust.

To hold otherwise would sanction the impairment of the value of the security afforded by the second deed of trust and decrease its value below its value at the time of the execution of such deed of trust at the expense of the holder of the lien secured by that deed of trust in favor of a creditor whose lien was not created until after the execution and delivery of the second deed of trust. The integrity of the value of the security for the second deed of trust, on which the trust creditor relied when the loan was made, should not be jeopardized or depreciated to the advantage of a subsequent lien creditor whose lien did not exist when the second deed of trust was made; and such creditor should be permitted to share in any surplus proceeds only to the extent that such surplus exceeds the value of the land covered by the second deed of trust.

The conclusion reached by this Court with respect to the proper application of the surplus of the proceeds of sale under the first deed of trust is supported by the decision in *Watts, Ritter & Company v. Read,* 111 W.Va. 145, 161 S.E. 18, in

which this Court, as to first and second deed of trust lienors, held in point 3 of the syllabus that "Where one creditor has a prior lien on two parcels of land, while another has a junior lien on only one of the parcels, the proceeds from the parcel not subject to the junior lien should first be applied in satisfaction of the prior lien, leaving any remainder from the other parcel to be applied upon the junior lien." In accordance with the principle stated in the syllabus in that case, the proceeds derived from the sale of the 7.01-acre tract, which was valued at approximately $32,600.00, except Lot No. B-2, should be applied to the satisfaction of the indebtedness secured by the first deed of trust and the surplus of $12,007.02, constituting the remainder of the proceeds derived from the sale of Lot No. B-2, which was valued at approximately $13,000.00, should be applied upon the indebtedness secured by the second deed of trust.

Section 7, Article 1, Chapter 38, Code, 1931, relating to the application of the proceeds of sale under a deed of trust, provides that the trustee shall apply such proceeds first to the payment of expenses attending the execution of the trust, including a commission to the trustee, and shall apply the balance of such proceeds pro rata, or in the order of priority, if any, prescribed by the trust deed to the payment of the debts secured and the indemnity of the sureties indemnified by the deed, and shall pay the surplus, if any, to the grantor, his heirs, personal representatives, or assigns, as their interest may appear. Unfortunately the first deed of trust did not prescribe the manner in which the surplus should be applied and under the foregoing statute the defendant trustees in the first deed of trust should have paid the surplus to the grantor or its assigns, as the interest of each should appear. There was no obligation upon the part of the trustees to pay any part of the surplus to the bank as the holder of the lien of the second deed of trust. It does not appear, however, that the grantor, B & B Development Company, Inc., objected or raised any question with respect to the payment of the surplus in satisfaction of the debt to the Bank of West Virginia secured by the second deed of trust. The grantor is not a party to this proceeding and its right to receive such surplus was not

considered or passed upon by the trial court. The effect, if any, of the failure of the trustees to pay the surplus to the grantor or its assigns instead of to the bank as the holder of the lien of the second deed of trust will not be considered or dealt with on this appeal.

As the trial court should have approved and affirmed the payment by the trustees of the surplus to the holder of the lien of the second deed of trust and should not have apportioned the surplus on the basis of 30 per cent to the holder of that lien and 70 per cent to the judgment creditor, the final judgment of the Common Pleas Court which required the defendant Bank of West Virginia to pay to the plaintiff 70 per cent of the surplus, amounting to $8,484.91, is reversed and set aside and this case is remanded to that court with directions that this proceeding be dismissed at the cost of the plaintiff.

*Reversed and remanded*
*with directions.*