569 A.2d 669

**WILLIAM H. METCALFE AND SONS, INC.**

v.

**CANYON DEFINED BENEFIT TRUST et al.**

**No. 140, Sept. Term, 1987.**

Court of Appeals of Maryland.

Feb. 13, 1990.

566

. Glenn M. Cooper (Hope B. Eastman, David A. Slacter, and Paley, Rothman, Goldstein, Rosenberg & Cooper, Chartered, all on brief), Bethesda, for appellant.

Carlton M. Green, College Park, and Murray L. Deutchman, Rockville, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL *, JJ.

COLE, Judge.

In this case we are asked to decide whether a junior lienholder on a portion of real property, foreclosed and sold in bulk, may be fully satisfied from the surplus of proceeds remaining after satisfaction of the primary lienholder without considering another and even more junior lien in the entire property.

The controversy revolves around two tracts of real property, one containing thirty-one (31) lots and the other containing ten (10) lots, situated in Prince George's County and owned by Intercontinental Construction Company. Washington Federal Savings and Loan Association (Washington Federal) is holder of the first deeds of trust on both tracts. All forty-one lots were in various stages of development.

Washington Federal foreclosed on each tract separately, but bulk sales were held in both instances. The first parcel of thirty-one lots contained four lots subject to second deeds of trust held by Canyon Defined Benefit Trust (Canyon). The second parcel of ten lots included seven lots subject to second deeds of trust also held by Canyon. William H. Metcalfe and Sons, Inc. (Metcalfe) held judgment liens against all of the lots of each tract; however, these liens were subsequent to the recording of Canyon's deeds of trust.

The sale of the two tracts yielded a surplus of $129,234.42 and $112,384.16, respectively, which was deposited in the registry of the Circuit Court for Prince George's County, pending determination of priority among junior lien credi-

---

* BLACKWELL, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

tors.[1] The circuit court determined priority to the funds in accordance with the date judgments were filed or deeds of trust recorded. Accordingly, the circuit court awarded Canyon the entire amount of its liens. The Court of Special Appeals affirmed in an unreported per curiam opinion. We granted certiorari to review the important question presented.

 It is a settled proposition of the law that the order of priority for payment of surplus proceeds from a foreclosure sale is based on the general rule "first in time is first in right." That is, the party whose claim attaches first to the subject property will be first reimbursed for the amount of that claim.[2] *Rankin v. Scott,* 12 Wheat. 177, 6 L.Ed. 592 (1827); *Aetna Casualty and Surety Co. v. Sherwood Distilling Co.,* 271 F.Supp. 381, 388 (D.Md.1967). The *Rankin* Court stated: "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds." *Rankin v. Scott,* 12 Wheat. at 179, 6 L.Ed. at 593. Metcalfe argues that the "first in time" rule of priority should not apply where, as here, Canyon would receive proceeds in satisfaction of its claim out of funds upon which it held no lien. Metcalfe further contends that Canyon did not fulfill its obligation to appraise or to estimate the value of its property in relation to the entirety of both tracts. In short, Metcalfe urges this Court to limit Canyon's recovery to a percentage of the surplus attributable only to the sale of Canyon's eleven lots.

Canyon counters that here, the distribution of surplus proceeds by the "first in time" rule of priority is entirely equitable since the circuit court found that the surplus

---

**1.** Although there were other junior lienors with claims on the property, only Canyon and Metcalfe are before this Court.

**2.** The common law principle "first in time is first in right" is universally accepted as the primary basis for determining the priorities of liens. This apparently is the first opportunity for the appellate courts of this State to address this rule.

proceeds could not be apportioned on a lot-by-lot basis because the entire tract was sold in gross. We do not agree.

This Court heretofore has not determined the proper distribution of surplus proceeds arising upon the foreclosure sale of property covered by a first mortgage, as between the mortgagee of a portion of the property and lienholders on other parts subject to the first mortgage. We granted certiorari to address this important issue.

Courts of this State assess competing claims to proceeds of the sale of mortgaged property based on standard principles of equity. *See Hamilton v. Schwehr*, 34 Md. 107 (1871). Maryland Rule W75, which governs the distribution of such surplus proceeds, provides at subsection (a):

Upon a sale of mortgaged property pursuant to this Subtitle, a person claiming an interest in the equity of redemption may apply to the court ratifying the sale to have the surplus of the proceeds of sale, after payment to the mortgagee of his claim and expenses, paid over to such person, or so much thereof as will satisfy his claim, and the court shall order distribution of such surplus *equitably among the claimants thereto.*

(emphasis added). The pertinent question in this case is what constitutes an "equitable distribution" among junior lienholders where, following foreclosure and satisfaction of a first deed of trust against an entire tract, an insufficient surplus remains to satisfy both the claims of the second lienholder of the entire tract and that of the prior lienholder of only a portion of the property. Unfortunately, there is a dearth of authority precisely on point. Nonetheless, there have developed in other jurisdictions at least two approaches to the distribution of proceeds under such circumstances.

Under the first approach, the junior lienholder whose rights attached first in time will have its claim satisfied first. *See, e.g., Banks–Miller Supply Co. v. Smallridge*, 154 W.Va. 360, 175 S.E.2d 446 (1970). That court viewed

the "first in time" approach as in accord with the general rule that junior liens are satisfied out of surplus in the same order of priority which they held prior to the foreclosure under a deed of trust.

In that case, the West Virginia Court of Appeals held that:

[W]here there has been a foreclosure and sale of a tract of land under a first deed of trust and there is a surplus after satisfying the lien of the first deed of trust and a portion of the tract is subject to the lien of a second deed of trust such lien attaches to the proceeds of sale and the surplus of such proceeds should be applied to the payment of the indebtedness secured by the second deed of trust to the extent, but not in excess, of the value of the land subject to the lien of the second deed of trust at the time of the sale to the exclusion of the holder of the lien of a judgment rendered after the recording of both deeds of trust which is a lien upon all the land covered by the first deed of trust, including the portion covered by the second deed of trust, but is subsequent in priority to the lien of the second deed of trust.

*Id.* at 367, 175 S.E.2d at 450.

The policy allegedly fostered by adhering to the "first in time" rule is the protection of the expectation of the junior lienholder at the time he executes the encumbering document. The court pointed out that an alternative approach would impair the value of the underlying security represented in the mortgage to unexpectedly favor a creditor having subsequently created rights:

The integrity of the value of the security for the second deed of trust, on which the trust creditor relied when the loan was made, should not be jeopardized or depreciated to the advantage of a subsequent lien creditor whose lien did not exist when the second deed of trust was made; and such creditor should be permitted to share in any surplus proceeds only to the extent that such surplus

exceeds the value of the land covered by the second deed of trust.

*Id.* at 367, 175 S.E.2d at 451.

A second case adhering to the theory that as between junior lienholders, one of which holds a lien on only a portion of the subject property, the surplus will be distributed in order of priority in time is *Burchell v. Osborne*, 119 N.Y. 486, 23 N.E. 896 (1890). In that case, the foreclosure of a blanket mortgage on eight houses created a surplus. The eight houses also were covered by another blanket mortgage, and some of them by several junior mortgages. The court awarded the surplus to the junior mortgagees in the order of time that their respective liens against the property were created. The court held that:

> The whole proceeds of sale formed a common fund, to be applied, first to the payment of the first and second mortgage debts, and then the surplus became, obviously, as it seems to my mind, subject to the claims of lienors upon the lands which had been sold, and applicable to those claims in the order of their priority.

*Id.* at 491–92, 23 N.E. at 897.

Under the second approach, it has been held that where a portion of property covered by a junior lien has contributed to the creation of a surplus, distribution of the proceeds should be determined by the proportionate share of that lien in the surplus funds. Instructive on this point is *Omaha National Bank v. Continental Western Corporation*, 203 Neb. 264, 278 N.W.2d 339 (1979), in which the holder of a first mortgage on the subject property encumbered in separate parcels to junior lienholders, sought to foreclose on that property. Following the authorized foreclosure sale, several junior lienholders filed applications for the distribution of the surplus remaining after satisfaction of the first mortgage. The Nebraska Supreme Court announced the rule that:

> When the first lienor forecloses a lien upon one or more tracts which have been encumbered to several junior lienors in several separate parcels, the primary lien

should be enforced against the entire security so that each junior lienor will bear the burden of the first lien in proportion to the value of the parcel upon which he has a claim; any surplus arising after the satisfaction of the first lien should then be apportioned among the junior lien holders according to the respective values of their security.

*Id.* at 269, 278 N.W.2d at 343 (citations omitted).

Although the court applied a rule of apportionment in distributing the surplus proceeds, it did not discount the propriety in certain cases of distribution among junior lien-holders in the order of their priority.

When, however, several junior lienors have taken security upon *the same tract,* their relative priority will depend upon the time when their liens attached.

*Id.* at 269–70, 278 N.W.2d at 343 (emphasis added).

In a similar case, *Bryson v. Newtown Real Estate and Development Corporation,* 153 Conn. 267, 216 A.2d 176 (1965), a first mortgage was taken on four contiguous tracts of land (Parcel A). Subsequently, a mortgage was created on one of those tracts (Parcel B) and a second mortgage taken on Parcel A. The parties presented evidence of the values of both Parcel A and Parcel B. The holder of the second mortgage on Parcel B argued that, since his mortgage was prior in time to that of the second mortgagor of Parcel A, a rule of priorities rather than a rule of apportionment should have been applied.

The Court did not agree stating that:

[S]ubsequent mortgagees, each having been given a security interest in separate portions of the property encumbered by the first mortgage, should share the burden of the first mortgage according to the proportionate value of their security interests.

*Id.* at 272, 216 A.2d at 178–79. Adhering to the view that equity in that case mandated that the two second mortgages should be treated equally, the *Bryson* Court restated the general rule:

[F]or, as between the subsequent purchasers or encumbrancers, each trusting to his own security upon the separate estate mortgaged to him, it is difficult to perceive that either has, in consequence thereof, any superiority of right or equity over the other. On the contrary, there seems strong ground to contend, that the original encumbrance or lien ought to be borne ratably between them, according to the relative value of the estates.

*Id.* at 272, 216 A.2d at 179 (citations omitted).

A third doctrine in this area has been employed by this Court where one creditor has a lien upon two properties and another holds a lien upon one of the parcels. In such cases, the first lienor may be compelled in equity to seek satisfaction of his claim from the sale of the parcel not covered by the second lien. *Gribble v. Stearman & Kaplan, Inc.*, 249 Md. 289, 297, 239 A.2d 573, 578 (1968). In its present form, this rule is called the "two fund" doctrine of marshaling assets or the inverse order of alienation doctrine. *See Oppenheimer v. Walker*, 3 Hun. 30 (N.Y.1874).

The primary goal of a creditor seeking to marshal assets is to require the primary lienor first to seek satisfaction of his claim from the fund which is unreachable by the creditor invoking the doctrine, so that the primary lien may be satisfied with the least possible impairment of the invoking creditor's security interest. *See Gribble*, 249 Md. at 297–98, 239 A.2d at 578; *Leib v. Stribling*, 51 Md. 285, 288 (1879); *Hamilton v. Schwehr, supra*, 34 Md. at 118.

The instant case, however, does not present the classic situation in which equity would mandate a marshaling of the assets. First, unlike the classic marshaling scenario, there is but *one* fund from which the creditors may be paid. The surplus arose from Washington Federal's foreclosure on the two tracts, following which all forty-one lots were sold in bulk. Second, the doctrine should not be employed where it would be detrimental to a third party having an interest in the other parcels, unless that party has an

inferior equity.[3] *See, e.g., Hamilton v. Schwehr, supra,* 34 Md. at 119; *Vandever Invest. Co. v. H.E. Leonhardt Lumber Co.,* 503 P.2d 185 (Okla.1972); *Sanborn, McDuffee Co. v. Keefe,* 88 N.H. 236, 187 A. 97 (1936). Here, allowing Canyon, which held liens on just eleven lots, to receive the entire surplus from the sale of all forty-one lots would operate to the detriment of Metcalfe which holds liens on all forty-one lots, including the remaining thirty lots.

As it is our duty under Rule W75 a to assure the equitable distribution of any surplus proceeds, given these facts, we align ourselves with those courts which apportion the surplus among the junior lienholders according to the respective values of their securities. Thus, we hold that where a foreclosure sale of property encumbered by a first mortgage produces a surplus, a junior lienholder of only a portion of that property should, in equity, receive only those proceeds derived from the sale of property encumbered to it. *Bryson, supra,* 153 Conn. at 272, 216 A.2d at 179.

Therefore, Canyon should not receive proceeds from the sale of property which never was pledged by the debtor as security at the time Canyon made its original loans.

■ Having determined that the parties shall receive proceeds from the surplus according to the values of their respective liens, we nonetheless are faced with a practical dilemma. The record before us contains no indication as to

---

**3.** In this regard, we recognize that we have held that a judgment is a general lien relating to the time when it is recorded and is subordinate to the superior equity of a prior specific lien. *Equitable Trust Co. v. Imbesi,* 287 Md. 249, 260, 412 A.2d 96, 101 (1980) (quoting *Union Trust Company v. Biggs,* 153 Md. 50, 61, 137 A. 509, 514 (1927)); *Garner v. Union Trust Co.,* 185 Md. 386, 45 A.2d 106 (1945); *Jackson v. County Trust Co.,* 176 Md. 505, 510, 6 A.2d 380 (1939). Canyon argues that since its deeds of trust creating a specific lien on the Intercontinental property were prior in time to Metcalfe's subsequent judgment liens, Canyon therefore has a superior equity. True, Canyon does have a superior equity in the property as to the eleven lots which its liens encumbered. As to the remaining thirty lots, however, it has no superior equity over Metcalfe since Metcalfe's judgments created liens against those lots and Canyon's deeds of trust did not. *See Biggs, supra,* 153 Md. at 60-61, 137 A. at 514.

the actual values of the individual lots at the time the two tracts were sold in bulk. Metcalfe argues that Canyon shouldered the burden of producing such evidence. The circuit court and Court of Special Appeals did not agree, finding it impossible "to apportion the surplus proceeds on a lot-by-lot basis because the entire tract was sold in gross." We are convinced, however, that Canyon incurred the risk of losing its priority status by failing to produce even a scintilla of evidence as to the amount of its entitlement.

Early on, we determined in *Cornell v. McCann*, 48 Md. 592 (1878), and reaffirmed in *Vollum v. Beall*, 117 Md. 617, 83 A. 1095 (1912), that a valid way to ascertain the relative respective values of encumbered property for purposes of distributing a mortgage sale surplus was to first offer the individual parcels separately, recording the high bid on each, then offer the land in bulk and record the selling price. Also, as in *Bryson, supra*, 153 Conn. at 269, 216 A.2d at 177, Canyon could have had the properties appraised. After failing to take these or some other reliable measures to demonstrate its entitlement, Canyon cannot complain that it was impossible at trial to adequately value the property.

Nevertheless, because this matter must be remanded and because under the rule we are directed to assure an equitable result, we shall reverse the judgment of the Court of Special Appeals and remand this case to the Circuit Court for Prince George's County to allow Canyon to submit evidence of the value of the eleven lots on which it held liens. The surplus, then, would issue first to Canyon up to the contribution of the eleven lots to that surplus, but *in no case exceeding the loan amount on each lot*. Should no such evidence be presented, the circuit court may use the bulk selling price of the two lots to apportion the proceeds pro rata among the secondary lienholders.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THE CIRCUIT COURT FOR FUR-

THER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ASSESSED AGAINST WILLIAM METCALFE AND SONS, INC. IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CANYON DEFINED BENEFIT TRUST. ALL COSTS IN THIS COURT TO BE PAID BY CANYON DEFINED BENEFIT TRUST EXCEPT WASHINGTON FEDERAL SAVINGS AND LOAN ASSOCIATION TO PAY OWN COSTS.