JEAN BRYSON *v.* NEWTOWN REAL ESTATE AND DEVELOPMENT CORPORATION ET AL.

KING, C. J., MURPHY, ALCORN, HOUSE and COTTER, Js.

Argued October 7—decided December 30, 1965

*Domenick J. Galluzzo,* with whom, on the brief, was *James L. Galluzzo,* for the appellant (defendant Pellegrino).

*Raphael Korff,* with whom was *Samuel C. Derman,* for the appellee (defendant Derman).

COTTER, J.  The plaintiff took a first mortgage from the named defendant, hereinafter referred to as the corporation, on four contiguous tracts of land, hereinafter referred to as parcel A.  The defendant Paul Pellegrino was subsequently given a mortgage by the corporation on one of these four tracts, hereinafter referred to as parcel B.  After the Pellegrino mortgage was given and recorded, the corporation granted a mortgage on parcel A to the defendant Edward M. Derman.  All three mortgages were properly executed by the corporation and were recorded in the order given.

When the corporation subsequently encountered financial difficulties, two foreclosure actions were begun, one by Pellegrino, on May 18, 1963, and the

other by the plaintiff, on August 14, 1963. Both cases were heard together, and a judgment ordering foreclosure by sale was rendered by the Superior Court in each case. Appraisers appointed by the court under General Statutes § 49-25 filed two returns on November 27, 1963, in which they found the value of parcel A to be $74,400 in the Bryson foreclosure and the value of parcel B to be $50,400 in the Pellegrino foreclosure. The four tracts were sold as one for $59,000 at an auction conducted by a court-appointed committee. Subsequently, this price was reduced to $57,000 to compensate for the elimination of a lot which had been mistakenly included in the description of the auctioned property but which was not covered by the mortgages. After the foregoing sale, the attorney who was then representing both the plaintiff and Pellegrino and the attorney representing Derman stipulated that the judgment in the Pellegrino case be opened, that the order for foreclosure by sale in that case be vacated and that the proceeds from the sale be applied to the judgment in the present case. The court vacated the judgment for foreclosure by sale in the Pellegrino case and confirmed the sale of the entire tract for $57,000 in the present case. Thereafter, the expenses of the sale were paid and a supplemental judgment was rendered fully satisfying the plaintiff's claim of $37,100, leaving a balance of $15,173.52 from the proceeds of the sale to be distributed to the junior lienors.

In a case such as this where there is a surplus after satisfying the prior mortgage, the liens of the junior encumbrances are transferred to the surplus fund, and the court determines the claims asserted by the junior encumbrancers. See *Markey* v. *Langley,* 92 U.S. 142, 155, 23 L. Ed. 701; *Gault* v. *Bacon,*

142 Conn. 200, 203, 113 A.2d 145; Glenn, Mortgages, pp. 519, 520; 59 C.J.S. 1529, Mortgages, § 800.

The disposition of this surplus represents the real controversy in this case. The only disputants are Pellegrino, who holds the second mortgage on one of the four tracts, and Derman, who holds the second mortgage on the other three and in effect has a third mortgage on the single tract upon which the Pellegrino mortgage is a second. The Superior Court, on the motion for a final supplemental judgment, heard testimony as to the respective values of the land on which these two disputants held their second mortgages, in order to apportion the surplus according to these values. Derman was the only party to offer evidence, and from this evidence the court concluded, as indicated by the memorandum of decision, to which we turn for a clarification of the finding, that the single tract on which Pellegrino held a second mortgage had a value of $35,000 and that the three tracts on which Derman held a second mortgage had a total value of $69,000.

In accordance with this valuation, the trial court determined that Derman was entitled to a pro rata share of 66.35 percent of the surplus. Since the amount thus allocated was slightly more than enough to satisfy Derman's claim of $9748.59, the court ordered that Derman be fully satisfied and that the entire balance of the surplus, or $5424.93, be paid toward Pellegrino's claim of $16,343.50. From a final judgment rendered thereon, Pellegrino has brought the present appeal.

The principal claim raised by Pellegrino is concerned with the rule applied by the lower court in disposing of the surplus fund from the foreclosure sale. Essentially Pellegrino claims that a rule of priorities rather than a rule of apportionment should

have been applied. He bases this contention on the fact that his mortgage was prior in time to that of Derman, and he argues that the burden of the plaintiff's mortgage should therefore have been attributed, so far as possible, to that portion of the entire tract on which Derman held the second mortgage, thus protecting the security of Pellegrino's prior second mortgage. We cannot agree with this contention, and we believe that the trial court properly employed a rule of apportionment in distributing the surplus in this case.

Pellegrino's only interest was in parcel B and, as to parcel B, he was a second mortgagee. His equity in parcel B was limited to a claim on that portion of the value of the property remaining after the first mortgage had been satisfied. The circumstances did not require that the debtor's assets be marshalled so as to protect the security of Pellegrino's lien. If the first mortgage could have been satisfied by drawing on the debtor's property in such a manner as to assure payment of both mortgages, to the burden of the debtor, equity would have required that it be done; but if the burden is to fall on another creditor, by dissipating his security, the same equitable considerations are not present and the rule does not apply. See *Andreas* v. *Hubbard,* 50 Conn. 351, 364.

Pellegrino also cites the rule that a mortgage is to be satisfied, in situations where subparcels of the mortgaged property have been subsequently conveyed by the mortgagor (without an assumption of the mortgage), in the inverse order of alienation. The stated rule is clearly applicable when the mortgagor conveys a fee interest in one or more portions of the mortgaged property. *Savings Bank* v. *Creswell,* 100 U.S. 630, 642, 25 L. Ed. 713; *New*

*England Mortgage Realty Co.* v. *Rossini,* 121 Conn. 214, 216, 183 A. 744; *Markham* v. *Smith,* 119 Conn. 355, 360, 176 A. 880; 4 Pomeroy, Equity Jurisprudence (5th Ed.), 668 § 1224. We do not, however, think that logic requires that the same rule be applied in situations where the subsequent alienations are in the form of mortgage deeds. We believe the better rule in such situations to be that the subsequent mortgagees, each having been given a security interest in separate portions of the property encumbered by the first mortgage, should share the burden of the first mortgage according to the proportionate value of their security interests. The rule has been alternatively stated as follows: "[F]or, as between the subsequent purchasers or encumbrancers, each trusting to his own security upon the separate estate mortgaged to him, it is difficult to perceive that either has, in consequence thereof, any superiority of right or equity over the other. On the contrary, there seems strong ground to contend, that the original encumbrance or lien ought to be borne ratably between them, according to the relative value of the estates." 2 Story, Commentaries on Equity Jurisprudence (11th Ed.), 542 § 1233d; see also 59 C.J.S. 1531, Mortgages, § 800; 3 Jones, Mortgages (8th Ed.), 694 § 2173. To the extent that Pellegrino has cited general authority to the contrary, we do not follow it.

The case of *Lomas & Nettleton Co.* v. *DiFrancesco,* 116 Conn. 253, 164 A. 495, has been cited by Pellegrino in support of his claim that a rule of priorities, rather than a rule of apportionment, should have been employed by the lower court. The court in that case said (p. 258): "If, upon proper pleadings, the holder of a junior mortgage upon one of two lots covered by a mortgage being fore-

closed can prove that by the appropriation of the lot not included in his mortgage, the mortgage being foreclosed will be fully paid and discharged, it may be that the court would be justified, in the absence of other controlling equities, in restricting the foreclosure to that lot." The *Lomas & Nettleton* case is not controlling authority in the present situation, and, as suggested by the quoted language, that case recognizes the principle that competing equitable considerations may displace otherwise applicable rules.

The distribution of a surplus from a foreclosure sale lies within the equity jurisdiction of the court. *Gruss* v. *Curry,* 132 Conn. 22, 26, 42 A.2d 358; *Desiderio* v. *Iadonisi,* 115 Conn. 652, 655, 163 A. 254; *Beach* v. *Isacs,* 105 Conn. 169, 176, 134 A. 787. Apportionment is an appropriate equitable remedy when the circumstances require that it be employed. *Andreas* v. *Hubbard,* 50 Conn. 351, 370; 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1222. "The principle, Equality is equity, or Equity delighteth in equality, is of very wide and general application. . . . It furnishes a practical rule for the guidance of equity courts in their administration of reliefs, whenever they obtain jurisdiction over a great variety of cases, unless some compulsory dogma of the law stands in the way." 2 Pomeroy, op. cit. § 405. In the present case, where no such dogma compels a contrary result, we believe the two second mortgagees should be treated equally and that it was proper for the court to apportion the surplus between them according to the respective values of their security.

A secondary claim of Pellegrino is that the trial court was bound by the returns of the court-appointed appraisers in determining valuation.

These returns, required under General Statutes § 49-25 whenever foreclosure by sale is ordered, are primarily intended to give the court a valuation by which to judge the fairness of the highest bid received. The appraisers are public agents who act in a quasi-judicial capacity in the doing of a public duty. *Congress Bank & Trust Co.* v. *Brockett,* 111 Conn. 490, 492, 150 A. 742. Their opinion, however, is not conclusive in determining valuation for the purpose of resolving collateral issues. *Cronin* v. *Gager-Crawford Co.,* 128 Conn. 688, 692, 25 A.2d 652. The case of *Wilcox* v. *Bliss,* 116 Conn. 329, 164 A. 659, cited by Pellegrino, was brought under what is now General Statutes § 49-14 and is clearly inapplicable to the present proceeding, which is governed by General Statutes §§ 49-25 and 49-27.

The court did not commit error in taking evidence relating to the value of these properties and in weighing that evidence with all the other evidence before it, which included the returns of the court-appointed appraisers. It held a hearing for that purpose, and both parties had ample opportunity to offer additional evidence. There is no claim that the resulting finding of the court was not supported by the evidence thus produced. Under these circumstances, the finding of the court as to valuation cannot be disturbed.

There is no error.

In this opinion the other judges concurred.