[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' OBJECTION TO MOTION FORAPPROVAL OF COMMITTEE SALE (#144) AND DEMAND FOR EVIDENTIARYHEARING (#146), AND COMMITTEE'S MOTIONS FOR APPROVAL OF COMMITTEESALE, DEED AND REPORT, AND FOR ALLOWANCE OF FEES AND EXPENSES(#142) AND FOR ADDITIONAL COMMITTEE EXPENSES (#145)
I. PROCEDURAL AND FACTUAL HISTORY
Connecticut Housing and Finance Authority (CHFA), the plaintiff, obtained summary judgment in this case on May 13, 1996, (Freed, J.) and a decree of foreclosure by sale on July 15, 1996 (Aurigemma, J.). The premises of the defendants, Joseph A. Moniz and Julie A. Moniz (Moniz), were sold at public auction on October 19, 1996, and the highest bid was the sum of $50,700. The sale was rejected and a new sale was ordered for March 15, 1997 (Freed, J.).
The second sale was held and the successful bid accepted by the committee of sale (committee) was $82,000, and the committee entered into a bond for deed with the bidder[1], subject to the approval of the court.
Moniz was granted this evidentiary hearing to contest the approval of the sale. What is not at issue here is whether the sale was conducted fairly and impartially. Nor is there any question raised concerning any irregularity in the sale procedure.
Rather, Moniz essentially claims rather that: (1) The burden of proof is on the proponents to show that the sale is fair and equitable and that the price bid is adequate; (2) That the return of the appraisal was improper under General Statutes § 49-25; (3) That the return of appraisal was improperly admitted as evidence; and, (4) That the appraisal in this case should not be given any weight. CT Page 11825
The court granted Moniz the evidentiary hearing required byNortheast Savings, F.A. v. Hintlian, 241 Conn. 269 (1997), and took evidence. The parties were also invited to file briefs. The court will deal with each of Moniz's claims in turn.
II. FINDINGS AND DISCUSSION
A. BURDEN OF PROOF
The court marked the appraiser s return under oath as a court exhibit. The appraiser, Richard Zemgulys, was available in court to be examined. The court agreed with Moniz that the committee and allied parties, the plaintiff (CHFA) and the defendant second mortgagee Asta Group, Inc., (Asta), as proponents of the motion to approve the sale, had the burden of proof on whether the sale should be confirmed. However, as the appraiser was court appointed and filed his return under oath with the court as ordered by the judgment decreeing a foreclosure of sale, I concluded that the burden of going forward with evidence to challenge the appraisal and sale was on Moniz. Moniz thereupon called Zemgulys as a witness.
B. IMPROPRIETY OF RETURN OF APPRAISAL
Moniz advances the argument that the return of appraisal filed was improper because it did not comply with § 20-504-2
of the regulations of the Commissioner of Consumer Protection, promulgated pursuant to the authority of general statutes §20-504. Section 20-504-2 of the regulations provides that appraisals be performed according to the standards of the Uniform Standards of Professional Appraisal Practice (USPAP).
Moniz specifically argues that USPAP's standards require that the appraisal set forth the "extent of collecting, confirming, and reporting data", "set forth all assumptions and limiting conditions that affect the analyses, opinions and conclusions", and "set forth the information considered, the appraisal procedures followed, and the reasoning that supports the analyses, opinions, and conclusions", USPAP Standards Rule 2-2(f), (g) and (h), 1994 Ed.[2] Moniz asserts that the return of appraisal under oath did not meet these and other requirements and was conclusory as well. This court disagrees.
First, the appraiser submitted his opinion as to value under oath in a single, one paragraph statement. The court takes CT Page 11826 judicial notice that for many years it was the established practice for a court ordered return of appraisal under §49-25 to be substantially similar to the one at issue here[3]. The appraiser also testified and his complete file was placed into evidence. There was no dispute or question as to his qualifications. His opinion of value was derived from an analysis of comparable sales which were appropriate. Second, to the extent that Moniz's argument means that a return of appraisal done under oath, to be filed in court pursuant to § 46b-25 or admissible in evidence in the face of a challenge, must comply with the USPAP standards, it is without merit. Moniz cites no authority for this proposition, and the court's own research revealed none.
The purpose of the statutory scheme created by § 20-504
and the regulations authorized thereunder, is merely for the licensing and certification of appraisers and the governing of their conduct and not to impose threshold standards for the admissibility, or content of, an appraisal under oath returned to court pursuant to § 49-25.
Rather, the long established rule is that, "Once the trial court has determined that the witness has reasonable qualifications to testify as an expert on the question presented, the objection goes to the weight rather than the admissibility of the testimony," State v. John, 210 Conn. 652, 677 (1989).
Moreover, "[i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion. Some facts must be shown as to the foundation for an expert's opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. Where the factual basis of an expert opinion is challenged, therefore, the question before the court is whether the uncertainties in the essential facts on which the opinions predicated are such as to make an opinion based on them without substantial value." (citations and internal quote marks omitted) Id.
Also, to the extent that Moniz claims that the USPAP standards itemized in Rules 2-2 (f), (g) and (h) must be set forth in the written report, that claim is without merit. The USPAP standards specifically provide for the issuance of oral appraisals. See USPAP standard Rule 2-1 which provides in relevant part: "Each written or oral real property appraisal report must: (a) clearly and accurately set forth the CT Page 11827 appraisal. . . . ."; the definition section of the standards, p. 8, defines "Report: [as] any communication, written or oral, of an appraisal. . . . . . ." and the comment thereto says, "oral report guidelines . . . . . . . are included to cover courttestimony. . . ." (emphasis added) id.
Finally, the appraiser's notes and testimony demonstrate that his appraisal was in substantial compliance with the USPAP standards.
I conclude that § 20-504 and the regulations promulgated thereunder set no threshold standard for the return of an appraisal under § 49-25 or the admissibility of such an appraisal; this is especially so where the appraiser testifies or is available for cross examination.
C. INADMISSIBILITY OF A CONCLUSORY APPRAISAL
Moniz argues that Zemgulys' appraisal was conclusory as to the value or the premises, was devoid of supporting information, and is not admissible as evidence of value.
In fact, the appraiser's file and testimony demonstrated that he viewed the exterior of the premises, photographed the home, examined its exterior condition, determined that it needed some repair, determined the lot size, the year the home was built, the zone, its purchase price of $45,900 in 1978, the assessment for tax purposes, the size of the house and living area and the number and type of rooms. He identified and analyzed three comparable sales. He also determined the details and characteristics of the comparables which were in geographic proximity to the premises sought to be foreclosed, and temporally close to the decree of foreclosure by sale. No challenge was made to the suitability of the comparables.
Therefore, I conclude that the appraisal was not conclusory, but was based on supporting factual information and this claim fails.
D. EXTERIOR-ONLY OR "DRIVE-BY" APPRAISAL IS INADMISSIBLE
I find that Zemgulys did not view the interior of the premises. He never sought permission to enter the premises for the purposes of an interior inspection. There was no showing that Moniz or the tenants in possession denied or would deny such CT Page 11828 entry. In fact, the committee who conducted both public auctions was permitted to, together with potential bidders, view the first floor of the premises on the dates of the auctions. Significantly, the prior appraisals presented in court on the date of the first decree of foreclosure by sale and the confirmation hearing thereon, also were exterior-only.
Zemgulys stated that the condition of the single family dwelling was average. It is not clear to the court whether this referred to both the exterior and interior, or was an assumption as to the interior. The three comparable sales were described as `average-fair' in one case, and `average-good' in the others. No hypothetical questions were asked as to how much, if any, his opinion of value would change, were he to assume the condition of the interior of the mortgaged premises ranged from below average to palatial, which may have cured the omission of the interior inspection. Nor did the committee's report describe or characterize the condition of the interior of the mortgaged premises.
I agree with the reasoning of Judges Berger and Aronson[4], that exterior-only appraisals are too flimsy a foundation upon which to rest a deficiency judgment. Both Federal Home Mortgage
and Citicorp Mortgage involve proceedings for a deficiency judgment sought after strict foreclosure. In this case, if the sale was confirmed, after payment of the foreclosing plaintiff's debt and costs incurred to date, there appears a balance remaining which would ordinarily be applied to Asta's debt, leaving a substantial shortfall. As this would be tantamount to a deficiency judgment, I see no reason why the reasoning of Judges Berger and Aronson should not apply here.
In so concluding, I recognize that a court-appointed appraiser is a public agent who acts in a quasi-judicial capacity in the doing of a public duty. Bryson v. Newtown Real Estate Development Corp. , 153 Conn. 267, 274 (1965). As such, his opinion is entitled to deference. However, such opinion is not binding upon the court. Danbury Savings and Loan Association v.Hovi, 20 Conn. App. 638, 641 (1990). "[the § 49-25 appraisal] procedure performs two different functions: (1) it gives the trial court guidance on the subsequent question of whether to approve the sale; and (2) it provides the basis for the reduction in the amount of a deficiency judgment permitted to the party who moved for the foreclosure by sale, required under §49-28."[5] New England Savings Bank v. Lopez, 227 Conn. 270, CT Page 11829 279 (1993). Under the totality of circumstances, I find that the appraisal is insufficiently reliable to give the court proper guidance on the fairness of a foreclosure sale.
"It is well established that a foreclosure action constitutes an equitable proceeding. In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." Citicorp Mortgage, Inc.v. Burgos, 227 Conn. 116, 120 (1993).
Sitting as a court of equity, I cannot simply reject the appraisal and refuse to confirm the sale and order a new sale. This course would add additional fees, expenses, the further accrual of interest, and may very well decrease Asta's recovery and increase the liability of Moniz to Asta, in the event a third sale brought a lower bid price.
Nor is there an affirmative showing by Moniz that the premises have a value greater than the appraised value of $90,000 or $82,000, the highest bid. Moniz had the opportunity to move the court to "appoint a second appraiser in its decree", pursuant to § 49-25. Or, he could have introduced an appraiser's testimony at the evidentiary hearing. He did neither.
The most equitable course for all parties involved, I conclude, is to defer decision on the confirmation of the sale and order Mr. Zemgulys to inspect the interior of the premises and file a supplemental return of appraisal under oath.
It is therefore ordered that he do so, and make return of said appraisal to this court on or before November 21, 1997. In aid of the foregoing order, the tenants, Herbert A. Gurdon and Cleo Honeysucker, are hereby ordered, upon reasonable notice to them, to allow Zemgulys to enter said premises at a reasonable time before November 21, 1997, in order to perform a reasonable inspection of the whole thereof.
Upon return of said supplemental appraisal, the parties shall have seven (7) days thereafter within which to request an additional hearing. If no such hearing is requested, then the court will deem the hearing completed, and decide the motion for confirmation of sale, and the motions ancillary thereto. CT Page 11830
Teller, J.