HUDSON VALLEY BANK *v.* ANDREW M.
KISSEL ET AL.
(SC 18547)

Palmer, Zarella, McLachlan, Eveleigh, Harper and Vertefeuille, Js.

Argued October 20, 2011—officially released February 7, 2012

*James R. Fogarty*, for the appellant (substitute defendant Stewart Title Guaranty Company).

*Thomas J. Donlon*, with whom was *Edward V. O'Hanlan*, for the appellee (defendant First American Title Insurance Company).

*Opinion*

McLACHLAN, J. This appeal concerns the distribution of the surplus proceeds from a foreclosure sale of property encumbered by multiple successive mortgages obtained through fraud. The defendant Stewart Title Guaranty Company (Stewart Title) appeals[1] from the judgment of the trial court rendered in favor of the defendant First American Title Insurance Company

---

[1] Stewart Title appealed from the decision of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

(First American),[2] and ordering that the remaining proceeds of a foreclosure sale, which were on deposit with the clerk of the Superior Court, be distributed to First American. Stewart Title claims that the trial court: (1) improperly granted First American's motion to intervene in the action; (2) applied an improper standard of review in granting relief pursuant to First American's motion to reargue the trial court's decision determining the priorities of the parties; and (3) improperly concluded, pursuant to an equitable distribution theory, that First American was entitled to receive all of the remaining funds from the foreclosure sale. First American argues that the trial court's judgment may be upheld on the alternate ground that, because First American's mortgage was recorded prior in time to Stewart Title's mortgage, it was entitled to all of the surplus proceeds on deposit pursuant to the first in time, first in right rule. We agree with First American, and, accordingly, affirm the judgment of the trial court.

The trial court set forth the following relevant factual and procedural background in its memorandum of decision. This foreclosure action concerns real property at 43 Burning Tree Road, Greenwich (property), purchased by the named defendant, Andrew M. Kissel, on July 27, 2004. At the time of purchase, Kissel obtained a first mortgage from Washington Mutual Bank (Washington Mutual) in the amount of $1,620,800. The mort-

---

[2] The plaintiff, Hudson Valley Bank, is not a party to this appeal. In its complaint, Hudson Valley Bank named the following defendants: Andrew M. Kissel; Independence Community Bank; Ridgefield Bank Mortgage Corporation; Sabia Landscaping, Inc., Hayley Kissel, R.S. Granoff Architects, P.C., and Robert Rozmus Plumbing and Heating, Inc. After Andrew Kissel died on April 3, 2006, Patrick Gil, the administrator of Andrew Kissel's estate, was substituted as a defendant. Subsequently, Stewart Title was substituted as a defendant in place of Independence Community Bank, First American was added as a defendant, and Fidelity National Title Insurance Company was substituted as a defendant in place of Ridgefield Bank Mortgage Corporation. Stewart Title and First American are the only parties involved in the present appeal.

gage was recorded in the Greenwich land records immediately after the recording of the warranty deed with which Kissel took title to the property. Kissel later recorded a forged release of the Washington Mutual mortgage, and then obtained a loan from the plaintiff, Hudson Valley Bank (Hudson Valley) in the amount of $4,500,000, secured by a mortgage deed on the property that was recorded in the Greenwich land records on March 22, 2005. Thereafter, Kissel used the same scheme to obtain two additional mortgages on the property. Relying on a forged, recorded release of the Hudson Valley mortgage, he obtained a loan of $1,000,000 from the defendant Independence Community Bank (Independence), secured by a mortgage deed on the property that was recorded in the Greenwich land records on May 25, 2005. Then, in June, 2005, he relied on a forged, recorded release of the Independence mortgage to obtain a mortgage loan on the property of $4,525,000 from Fairfield County Bank Corporation, which was assigned to the defendant Ridgefield Bank Mortgage Corporation (Ridgefield Bank). The Ridgefield Bank mortgage was recorded in the Greenwich land records on June 3, 2005. Kissel subsequently defaulted on all four mortgages.

Hudson Valley commenced the present foreclosure action against Kissel on August 2, 2005, also naming Independence and Ridgefield Bank as defendants. See footnote 2 of this opinion. The court rendered a judgment of foreclosure by sale on January 29, 2007, at which time it found the fair market value of the property to be $2,200,000. The property sold for $2,300,000 at the foreclosure sale on March 31, 2007. After payment of the costs of the sale and distribution of the balance remaining on the Hudson Valley mortgage loan, the surplus proceeds of approximately $404,000, which are the subject of this appeal, were deposited with the clerk of the Superior Court. Stewart Title and First American,

both title insurance companies, each claimed entitlement to all or part of the surplus proceeds.

Stewart Title, which had provided title insurance for Independence's mortgage from Kissel, received and recorded an assignment to Stewart Title of that mortgage from Independence. On May 8, 2006, the trial court granted Stewart Title's motion to be made a party defendant to this action. First American had provided title insurance for both the Washington Mutual and the Hudson Valley mortgages on the property. On March 30, 2007, First American recorded in the Greenwich land records an assignment to First American of the Washington Mutual mortgage and an agreement subordinating the Washington Mutual mortgage to that of Hudson Valley. The trial court subsequently granted First American's motion to be added as a party defendant in this action.

On September 6, 2008, First American filed a motion for determination of priorities and further supplemental judgment, seeking a determination that its interest was prior to that of all other lien holders in the action, and, consequently, that First American was entitled to receive the full amount of the surplus proceeds. Stewart Title filed an objection to the motion and sought equitable apportionment of the surplus proceeds between Stewart Title and First American on a pro rata basis. The matter appeared on the nonarguable short calendar list for January 5, 2009, and the court, *Downey, J.,* sustained Stewart Title's objection and apportioned the surplus proceeds as Stewart Title had requested. In calculating Stewart Title's pro rata share of the surplus proceeds, the court considered the amount remaining on Stewart Title's mortgage on the property and the amount that Kissel's estate owed to Stewart Title in connection with a judgment that Stewart Title had been awarded in a separate foreclosure action, concerning a different property, at 58 Quaker Lane, Greenwich.

Judge Downey stated in a brief, handwritten order: "The court, having considered the respective positions of Stewart Title and First American, recognizing also the underlying fraud of . . . Kissel, and further considering the overall equities, orders that the remaining amount of $404,277.71 be distributed as proposed by Stewart Title, namely $288,896.85 (71.46 [percent]) to Stewart Title, and $115,380.86 (28.54 [percent]) to First American." First American subsequently filed a motion to reargue, which the trial court, *Tierney, J.*, granted.[3] The court then ruled in favor of First American, relying on an equitable distribution theory known as pari passu, and ordered the clerk of the Superior Court to distribute to First American the entirety of the surplus proceeds, along with any accrued interest. This appeal followed.

I

We begin with Stewart Title's claim that the trial court improperly granted First American's motion to be made a party defendant in the foreclosure action, thus allowing First American to intervene in the action. The sole basis of Stewart Title's claim is that the motion to intervene was not timely in that it was not filed until after the foreclosure sale had occurred. We disagree.

The following additional facts are relevant to our resolution of this claim. The foreclosure action underlying this appeal commenced in a complaint dated August 1, 2005. The court rendered judgment of foreclosure by sale on January 29, 2007, resulting in a foreclosure sale on March 31, 2007. On March 29, 2007, First American received an assignment of the Washington Mutual mortgage, which was recorded in the Greenwich land records. The next day, First American subordinated its mortgage to that of Hudson Valley, in an agreement that was recorded in the Greenwich land records on

_____

[3] When First American's motion to reargue was assigned for a hearing, Judge Downey was no longer a judge of the Superior Court.

that day. On April 13, 2007, First American filed a motion to be added as a party defendant in this action. In the motion, First American expressly stated that it did not intend to assert any defenses to the court's judgment of foreclosure by sale, and that the purpose of its intervention was limited to protecting its interest in the surplus proceeds from the foreclosure sale. On April 23, 2007, the court granted the motion to approve the committee sale and deed. The foreclosure sale was confirmed by the trial court on June 25, 2007.

"[A]ny motion for intervention, whether permissive or of right, must be timely. See Fed. R. Civ. [P.] 24. The timeliness of a motion for intervention, however, must be judged by all of the circumstances of the case. . . . In any event, an untimely motion for intervention of right is not transformed automatically thereby into a motion for permissive intervention. The right to intervene is lost, not merely weakened, if it is not exercised in a timely fashion. . . . As a general matter, the timeliness requirement is applied more leniently for intervention of right than for permissive intervention because of the greater likelihood that serious prejudice will result.[4] . . . In making this determination of timeliness with respect to motions to intervene as a matter of right, courts must take into consideration the nature of the interest and for what purpose the intervenor is seeking to be brought into the action." (Citations omitted; internal quotation marks omitted.) *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 744–45, 699 A.2d 73 (1997), overruled in part on other grounds by *Kerrigan*

---

[4] First American did not expressly seek to intervene as of right in its motion to be added as a party defendant and does not claim on appeal that it was entitled to intervene as of right. It is unnecessary for us to determine whether First American would have been allowed to intervene as of right, however, because even without the benefit of the more lenient application of the timeliness analysis, we conclude that First American moved to intervene in a timely manner.

v. *Commissioner of Public Health*, 279 Conn. 447, 455, 904 A.2d 137 (2006).[5]

*Washington Trust Co.* v. *Smith*, supra, 241 Conn. 738, involved two motions to intervene, both of which were filed after the foreclosure sale had been held, but before the confirmation of the sale by the court. In evaluating whether the motions to intervene were rendered untimely by virtue of being made after the foreclosure sale, we examined the nature of the interest asserted by each of the intervenors—both relied on an asserted right of redemption—and whether those rights survived the foreclosure sale. Id., 741–42. Because a foreclosure sale is not absolute until it is confirmed by the court, we concluded that the right of redemption survives the foreclosure sale, and, therefore, that a motion to intervene to protect the right of redemption is timely when filed before confirmation of the sale. Id., 742–43.

---

[5] The standard of review of a trial court's decision regarding the timeliness of a motion to intervene is less than clear. Although *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744–45, refers to the trial court's broad discretion in ruling on a motion to intervene, we later overruled *Washington Trust Co.* in *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 454–55, on the sole issue of the applicable standard of review. In *Kerrigan*, we concluded that we are required "to review de novo the trial court's determination as to the nature and extent of the interests at issue in a motion for intervention as a matter of right." Id., 454. Because the timeliness of the motion in *Kerrigan* was not at issue in that appeal, however, we specifically declined to reconsider the "standard of review applicable to the trial court's initial determination of timeliness"; id., 455 n.11; and reserved for the future any possible reconsideration of that standard. In the present case, the parties have not briefed the issue of the proper standard of review of the trial court's timeliness determination. Stewart Title simply has asserted in a title heading, with no support or argument, that the standard of review is plenary. First American has recognized the uncertainty of the applicable standard of review, but declined to brief the issue on the basis that even under the broader, de novo level of review, the trial court's timeliness determination withstands scrutiny. We agree with First American's assessment and review the court's timeliness determination de novo, reserving for a future case the question of whether we will reconsider the application, in *Washington Trust Co.*, of the abuse of discretion standard of review.

Similarly, in the present case, First American's only asserted interest in the foreclosure action was in receiving the surplus proceeds. Because the foreclosure sale did not extinguish that interest, we conclude that the filing of the motion to intervene following the sale and prior to the confirmation of the sale was timely. Moreover, First American did not have an interest in the property until it received the assignment of mortgage on March 29, 2007, and it filed its motion to intervene reasonably promptly, only fifteen days later, on April 13, 2007.[6]

## II

Stewart Title next claims that the trial court applied an improper scope of review in addressing the merits of First American's motion to reargue.[7] Specifically, Stewart Title contends that Judge Tierney was required to review Judge Downey's decision apportioning the surplus proceeds between First American and Stewart Title for abuse of discretion. We disagree.

[6] Stewart Title *appears* to suggest that because First American provided no explanation as to why it waited until March 29, 2007, to receive the assignment of mortgage from Washington Mutual, we should measure timeliness from an earlier stage in the proceedings. Stewart Title's brief does not clarify precisely what that earlier stage should be, and instead vaguely suggests that First American was obligated to receive the assignment of the mortgage from Washington Mutual "sooner." As Stewart Title has cited to no authority in support of its claim, we do not address it.

[7] Stewart Title also points out that in seeking reargument, First American incorrectly cited to Practice Book § 11-12, which governs motions to reargue an interlocutory order, rather than Practice Book § 11-11, which governs motions to reargue a decision that constitutes a final judgment for purposes of appeal, and requires that the moving party "shall indicate on the bottom of the first page of the motion that such motion is a Section 11-11 motion." It is unclear what inference Stewart Title is asking the court to draw from the failure to comply with Practice Book § 11-11. Although Stewart Title seems to imply that the procedural error precluded Judge Tierney from permitting reargument, Stewart Title concedes that the standards governing the two rules of practice are not distinguishable, and admits that several decisions of the Superior Court have overlooked the same error, and permitted reargument. To the extent that Stewart Title's brief *could* be interpreted to challenge Judge Tierney's decision to grant reargument on the basis of

The question of whether Judge Tierney was required to give deference to Judge Downey's decision in considering First American's motion to reargue presents a question of law, over which we exercise plenary review. "[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94 n.28, 952 A.2d 1 (2008). Moreover, we have stated that "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Internal quotation marks omitted.) *Miller* v. *Kirshner*, 225 Conn. 185, 192, 621 A.2d 1326 (1993).[8] We reject the

First American's failure to comply with Practice Book § 11-11, we deem that claim to be abandoned.

[8] In support of its claim that a judge may not consider an issue de novo on reargument, Stewart Title cites to several of our decisions indicating that we review a trial court's decision to grant or deny reargument for abuse of discretion. See, e.g., *Weinstein* v. *Weinstein*, 275 Conn. 671, 705, 882 A.2d 53 (2005). Stewart Title also relies on our decision in *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 201–202, 596 A.2d 396 (1991), in which we concluded that the trial court improperly failed to apply substantial evidence review of the agency's decision, as required by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. Neither a trial court's review of an agency's decision nor our review of a trial court's discretionary decision is analogous to the decision of a trial court in deciding the merits of a motion to reargue, where the trial court makes its ruling as a matter of law.

Stewart Title also states in its brief that Judge Tierney needed its consent in order to afford plenary consideration to the question of the proper allocation of the surplus proceeds, and further suggests that Judge Tierney shared this belief. The fact that Judge Tierney may or may not have mistakenly believed that he needed the consent of the parties in order to consider the issue de novo is immaterial.

notion that a trial judge who determines that a legal error has occurred must allow the error to be memorialized until it can be corrected by appellate review.

First American relied on the motion to reargue for a proper purpose—to call to the attention of the court the controlling principle of law that Judge Downey had failed to apply. In its motion for determination of priorities, First American relied on the well established first in time, first in right rule in arguing that it was entitled to receive distribution of all of the surplus proceeds because its mortgage had been recorded prior to those of the other remaining lien holders. In its objection to First American's motion, Stewart Title instead requested that the court equitably apportion the surplus proceeds, arguing that its pro rata share should be determined on the basis of the mortgage it held on the property and the award it had recovered in relation to a foreclosure action on a different property. Judge Downey apportioned the proceeds according to the ratios that Stewart Title proposed, calculating Stewart Title's share on the basis of its interests in the two properties. In an instance such as this, where the court not only failed to apply the controlling law under which First American would be entitled to receive all of the surplus proceeds, but took the extra, inexplicable step of allowing Stewart Title to recover on the basis of an award that was made in connection with an entirely different property in a different proceeding, Judge Tierney properly granted reargument and gave plenary consideration to the merits.[9]

Additionally, the parties' various disagreements—as to whether First American did or did not request oral argument when it initially filed the motion, whether Judge Downey was obligated to hear oral argument and whether Judge Tierney based his decision in part on a belief that Judge Downey's judgment was defective because he decided the motion without hearing oral argument—have no bearing on our analysis.

[9] Additionally, Stewart Title suggests that because a foreclosure action is one in equity, the abuse of discretion standard must apply. Even when a court sits in equity, however, its resolution of a question of law, such as the determination of the applicable legal principle, is subject to de novo review.

## III

Finally, we address Stewart Title's claim that the trial court improperly concluded that First American was entitled to recover all of the surplus proceeds. The trial court arrived at its conclusion by applying the doctrine of pari passu. First American argues that the trial court's decision may be affirmed on the alternate ground that, pursuant to the first in time, first in right principle, First American was entitled to recover all of the surplus proceeds because its mortgage was executed and recorded prior to that of Stewart Title. We agree with First American that the judgment of the trial court may be affirmed on this alternate ground.

"The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A fundamental principle is that a mortgage that is recorded first is entitled to priority over subsequently recorded mortgages provided that every grantee has a reasonable time to get his deed recorded." *Independence One Mortgage Corp.* v. *Katsaros*, 43 Conn. App. 71, 73, 681 A.2d 1005 (1996); accord *Brown* v. *General Laundry Service, Inc.*, 139 Conn. 363, 372, 94 A.2d 10 (1952), vacated on other grounds, 347 U.S. 81, 74 S. Ct. 367, 98 L. Ed. 520 (1954); *Beers* v. *Hawley*, 2 Conn. 467, 469 (1818). It is undisputed that the Washington Mutual mortgage now held by First American was recorded before the Independence mortgage now held by Stewart Title. That mortgage originally was the first mortgage on the property, and was subordinated only to Hudson Valley's mortgage, making it, for practical purposes, the second mortgage on the property. Stewart Title's mortgage was recorded after Hudson Valley's mortgage, making it the third mortgage on the property. Accordingly, First American's mortgage is prior to Stewart Title's and First

American is entitled to recover the entire surplus proceeds on deposit in the clerk's office.[10]

Stewart Title's arguments to the contrary are unpersuasive. Its primary substantive argument appears to be that the present case is governed by this court's decision in *Bryson* v. *Newtown Real Estate & Development Corp.*, 153 Conn. 267, 271, 216 A.2d 176 (1965), in which we upheld the trial court's application of equitable apportionment to the surplus proceeds from a foreclosure sale. *Bryson*, however, is distinguishable from the present case, and does not suggest that the "first in time" rule does not apply to surplus proceeds. *Bryson* involved a parcel consisting of four contiguous tracts of land. There were three mortgages at issue in the case, given and recorded in the following order: (1) the defendant owner gave a first mortgage to the plaintiff on all four tracts; (2) the defendant owner next gave a mortgage to the defendant Paul Pellegrino on only one of the four tracts; and (3) the defendant owner gave a mortgage on all four tracts to the defendant Edward M. Derman. Id., 268. Both the plaintiff and Pellegrino subsequently brought foreclosure actions, which were consolidated and resulted in a judgment of foreclosure by sale.[11] Id., 269. After the plaintiff's claim and

---

[10] Stewart Title claims that, because neither Judge Downey nor Judge Tierney applied the first in time, first in right rule, First American may not rely on that theory as an alternate ground for affirmance. Additionally, although Stewart Title concedes that First American raised this issue as an alternate ground for affirmance in its preliminary statement of the issues, it contends that, because First American failed in its brief to use the phrase "alternate ground for affirmance" in setting forth this issue, First American may not rely on the first in time, first in right principle as an alternate ground for affirming the decision of the trial court. None of Stewart Title's claims have any merit. First American raised the issue to the trial court in its original motion and in the motion to reargue, identified it in the preliminary statement as an alternate ground, and has argued the issue to this court. The issue is properly before us as an alternate ground for affirmance.

[11] Originally, the court rendered two judgments of foreclosure by sale, one in each case. The Pellegrino judgment subsequently was vacated. *Bryson* v. *Newtown Real Estate & Development Corp.*, supra, 153 Conn. 269.

the costs of the sale were paid, the trial court apportioned the surplus proceeds between Pellegrino and Derman, arriving at the pro rata shares on the basis of its finding that the single tract of land on which Pellegrino held a second mortgage had a value of $35,000 and that the three tracts of land on which Derman held a second mortgage had a value of $69,000. Id., 270. Accordingly, the court determined that Derman was entitled to a pro rata share of 66.35 percent of the surplus proceeds. Because that amount exceeded the amount claimed by Derman, the court awarded the remainder to Pellegrino, in addition to his pro rata share of 33.65 percent of the surplus proceeds. Id. On appeal to this court, Pellegrino claimed that the court properly should have distributed the surplus proceeds according to the "first in time" rule rather than apportioning the proceeds. See id., 271. We disagreed, observing that Pellegrino's only interest was in the single tract of land on which he was a second mortgagee. Accordingly, his equity in that tract of land "was limited to a claim on that portion of the value of the property remaining after the first mortgage had been satisfied." Id. Our holding specifically was limited to circumstances in which subsequent encumbrancers have been given security interests on separate estates. In such a circumstance, we concluded, the subsequent mortgagees each "should share the burden of the first mortgage according to the proportionate value of their security interests." Id., 272. Moreover, in rejecting Pellegrino's claim that a rule of priority should have been applied, we observed that the trial court had treated two *second* mortgages equally—the second mortgage held by Pellegrino on the single tract of land and the second mortgage held by Derman on the remaining three tracts. Id., 273. Accordingly, we concluded that "it was proper for the court to apportion the surplus between them according to the respective values of their security." Id. *Bryson,*

therefore, does not govern the present appeal, which involves First American's second mortgage and Stewart Title's third mortgage on the identical piece of property. Equitable apportionment among the subsequent mortgagees would be improper under these facts.

Finally, although we have resolved this appeal on the alternate ground for affirmance, we take the opportunity to clarify that the doctrine of pari passu, which the trial court stated it was applying in reaching the same conclusion, does not apply under the facts of the present case, and, in fact, represents a significant departure from our established precedent. "Pari passu" as explained by the trial court, is a Latin phrase that means with " 'equal step.' " Black's Dictionary explains that the phrase is "[u]sed especially of creditors who, in marshalling assets, are entitled to receive out of the same fund without any precedence over each other." Blacks Law Dictionary (6th Ed. 1990), p. 1115. "Marshalling assets" refers to "an equitable doctrine requiring a senior creditor, having two funds to satisfy his debt, to resort first to the one fund which is not subject to the demand of a junior creditor of the common debtor, to avoid the inequity which would result from an election of the senior creditor to satisfy its demand out of the only fund available to the junior creditor, thereby excluding the junior creditor from any satisfaction." Id., pp. 973–74. The doctrine of pari passu ordinarily is applied in the context of bankruptcy proceedings as opposed to foreclosure proceedings, in which we apply the principle of first in time, first in right. Compare *Robinson* v. *Security Co.*, 87 Conn. 268, 270, 87 A. 879 (1913) (applying doctrine of pari passu in bankruptcy proceedings), with *Independence One Mortgage Corp.* v. *Katsaros*, supra, 43 Conn. App. 73 (applying first in time, first in right principle in foreclosure proceedings).

A close reading of the trial court's memorandum of decision reveals that the court implicitly recognized

the incompatibility of the doctrine of pari passu to the distribution of assets in a foreclosure action.[12] In its purported application of the doctrine of pari passu, the court recognized that, following the foreclosure sale, there remained three levels, or classes, of claimants. In the first level was First American, by virtue of holding the first recorded mortgage. Hudson Valley and Independence occupied the second and third levels respectively, by virtue of the dates on which their respective mortgages were recorded. After determining that First American alone occupied the first level, and that its claim exceeded the amount of the surplus proceeds, the court "distributed" all of the surplus proceeds to First American as the sole creditor in that level, supposedly pursuant to the doctrine of pari passu. This was nothing more than an implicit application of the first in time, first in right doctrine to the distribution of the surplus proceeds, which we emphasize is the applicable doctrine to determine the distribution of surplus proceeds following a foreclosure sale.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[12] As we already have explained, the present case does not involve facts that are analogous to *Bryson*, in which it was possible to marshall the assets.